DOMINIC VINCENZO *v.* WARDEN, STATE PRISON (9593)

DUPONT, C. J., NORCOTT and HEIMAN, Js.

Argued September 19—decision released November 12, 1991

*David L. Kent,* for the appellant (petitioner).

*L. D. McCallum,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellee (respondent).

NORCOTT, J. This is an appeal from the dismissal of a habeas corpus petition that requires this court to explore the outer limits of jurisdiction relative to the ephemeral and complex boundaries of the Great Writ.[1]

The petitioner claims that the habeas court improperly dismissed his petition because it failed to find that the state board of parole is subject to the rule-making provisions of the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq. The habeas court dismissed the petition upon determining that the petitioner's claimed right to parole was not an interest sufficient to give rise to habeas relief. While the petitioner urges that we reach the merits of his claim, at oral argument we questioned counsel about the issue of the habeas court's jurisdiction over the subject matter. We must resolve this issue before reaching the merits of this appeal. This court has jurisdiction to determine whether a trial court had jurisdiction. *Drake* v. *Planning & Zoning Commission,* 14 Conn. App. 583, 541 A.2d 1251 (1988) (en banc). Because we conclude that no liberty interest was implicated by the petitioner's claim, the habeas court lacked jurisdiction over the subject matter. That court, therefore, properly dismissed the petition.

---

[1] Discussing the difficulties in defining the scope of habeas, Justice Frankfurter noted that "the writ has potentialities for evil as well as for good. . . . The circumstances and conditions for bringing into action a legal remedy having such potentialities obviously cannot be defined with a particularity appropriate to legal remedies of much more limited scope. To attempt rigid rules would either give spuriously concrete form to wide-ranging purposes or betray the purposes by strangulating rigidities. . . . The fact that we cannot formulate rules that are absolute or of a definiteness almost mechanically applicable does not discharge us from the duty of trying to be as accurate and specific as the nature of the subject permits." *Brown* v. *Allen,* 344 U.S. 443, 512–13, 73 S. Ct. 397, 97 L. Ed. 469 (1953).

The pertinent facts are undisputed. The petitioner was convicted of murder in 1974 and sentenced to a term of imprisonment of twenty years to life. In 1977, he was sentenced to a consecutive term of one to four years for conspiring to bring unauthorized items into a penal institution. On August 25, 1986, the parole board conducted a hearing to determine whether the petitioner should be paroled to the consecutive sentence. At the time of the hearing, the board was operating under its own procedures and regulations, which had not been submitted to the state attorney general and the legislature for approval prior to implementation. General Statutes §§ 4-169 and 4-170. The board denied the petitioner release and gave him written notice of the reasons for its decision. The petitioner then sought a writ of habeas corpus, alleging that his confinement is illegal because the board's regulations do not conform to the requirements for rule-making that it must follow as a state agency pursuant to the UAPA. After a trial to the court on March 27, 1989, the petition was dismissed on May 11, 1990. This appeal followed.

The issue presented to this court requires us to determine whether a prisoner's challenge to the parole board's failure to adopt regulations pursuant to the UAPA constitutes a cognizable claim of illegal detention that gives the habeas court jurisdiction over the subject matter. Jurisdiction over the subject matter is the court's power to hear and decide cases of the general class to which the proceedings at issue belong. *Gurliacci* v. *Mayer,* 218 Conn. 531, 542, 590 A.2d 914 (1991); *LeConche* v. *Elligers,* 215 Conn. 701, 709, 579 A.2d 1 (1990); *Castro* v. *Viera,* 207 Conn. 420, 427, 541 A.2d 1216 (1988); *Shea* v. *First Federal Savings & Loan Assn. of New Haven,* 184 Conn. 285, 288, 439 A.2d 997 (1981). A court has subject matter jurisdiction if it has

the authority to hear a particular type of legal controversy. This jurisdiction relates to the court's competency to exercise power. *Castro* v. *Viera,* supra; *State* v. *Malkowski,* 189 Conn. 101, 105–106, 454 A.2d 275 (1983); *Monroe* v. *Monroe,* 177 Conn. 173, 185, 413 A.2d 819, appeal dismissed, 444 U.S. 801, 100 S. Ct. 20, 62 L. Ed. 2d 14 (1979).

Unlike jurisdiction over the person, subject matter jurisdiction cannot be created through consent or waiver. *Castro* v. *Viera,* supra, 429–30; *United States Trust Co.* v. *Bohart,* 197 Conn. 34, 39, 495 A.2d 1034 (1985); *Hayes* v. *Beresford,* 184 Conn. 558, 562, 440 A.2d 224 (1981); *State* v. *Jones,* 166 Conn. 620, 627, 353 A.2d 764 (1974); *Reed* v. *Reincke,* 155 Conn. 591, 598, 236 A.2d 909 (1967). Once the question of lack of jurisdiction of a court is raised, " '[it] must be disposed of no matter in what form it is presented.' " *Carten* v. *Carten,* 153 Conn. 603, 610, 219 A.2d 711 (1966); *Castro* v. *Viera,* supra, 429; *Monroe* v. *Monroe,* supra, 177; *Browning* v. *Steers,* 162 Conn. 623, 625, 295 A.2d 544 (1972). The court must "fully resolve it before proceeding further with the case." *Castro* v. *Viera,* supra, quoting *Valley Cable Vision, Inc.* v. *Public Utilities Commission,* 175 Conn. 30, 32, 392 A.2d 485 (1978); *Gurliacci* v. *Mayer,* supra, 545; *Statewide Grievance Committee* v. *Rozbicki,* 211 Conn. 232, 245, 558 A.2d 986 (1989); *Gimbel* v. *Gimbel,* 147 Conn. 561, 566, 163 A.2d 451 (1960). Whenever a court finds that it has no jurisdiction, it must dismiss the case, without regard to previous rulings. *Pet* v. *Department of Health Services,* 207 Conn. 346, 351, 542 A.2d 672 (1988); *Cahill* v. *Board of Education,* 198 Conn. 229, 238, 502 A.2d 410 (1985); *Chzrislonk* v. *New York, N.H. & H. R. Co.,* 101 Conn. 356, 358, 125 A. 874 (1924).

We begin by taking note of the basic purpose underlying what is one of the most extraordinary and unique

legal remedies "in the procedural armory of our law." *Brown* v. *Allen,* 344 U.S. 443, 512, 73 S. Ct. 397, 97 L. Ed. 469 (1953). Although it is true that the United States Supreme Court "has not 'always followed an unwavering line in its conclusions as to the availability of The Great Writ' "; *McClesky* v. *Zant,* 499 U.S.

, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991), quoting *Fay* v. *Noia,* 372 U.S. 391, 411–12, 83 S. Ct. 822, 9 L. Ed. 2d 837 (1963); from the time the writ originated in seventeenth century England, its central purpose has been to test the legality of detention. English legislation and common law have been recognized by the United States Supreme Court as authoritative guides in applying the writ in the federal courts. *McNally* v. *Hill,* 293 U.S. 131, 136–37, 55 S. Ct. 24, 79 L. Ed. 238 (1934), overruled on other grounds, *Peyton* v. *Rowe,* 391 U.S. 54, 88 S. Ct. 1549, 20 L. Ed. 2d 426 (1968).[2]

In applying federal habeas statutes,[3] the United States Supreme Court has said that '[t]he purpose of the proceeding defined by the statute was to inquire into the legality of the detention . . . . There is no warrant in either the statute or the writ for its use to invoke judicial determination of questions which could not affect the lawfulness of the custody and detention, and no suggestion of such a use has been found in the commentaries on the English common law." *McNally* v. *Hill,* supra; see also *Engle* v. *Isaac,* 456 U.S. 107, 136, 102 S. Ct. 2286, 73 L. Ed. 2d 83 (1982) (Stevens, J., concurring in part and dissenting in part) (relief available to a prisoner only if he is held in custody in violation of the constitution or laws or treaties of the United States); *Preiser* v. *Rodriguez,* 411 U.S. 475, 484, 93 S.

---

[2] Although the Supreme Court in *Peyton* rejected *McNally's* view of "custody," commentators have observed that "the link between the writ and restraints on liberty has never been severed." L. Yackle, "Explaining Habeas Corpus," 60 N.Y.U. L. Rev. 991, 999 n.26 (1985).

[3] 28 U.S.C. § 2241 et seq.

Ct. 1827, 36 L. Ed. 2d 439 (1973) ("[i]t is clear, not only from the language of [the federal habeas statutes], but also from the common-law history of the writ, that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody"); *Fay* v. *Noia,* supra, 402 (writ's "root principle is that in a civilized society, government must always be accountable to the judiciary for a man's imprisonment: if the imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release"); H. Hart and H. Wechsler, The Federal Courts and the Federal System (3d Ed.) 1468 ("Great Writ always serves the function of precipitating a judicial inquiry into a claim of illegality in the petitioner's detention for the purpose of commanding his release, or other appropriate disposition."); P. Bator, "Finality in Criminal Law and Federal Habeas Corpus for State Prisoners," 76 Harv. L. Rev. 441, 444–45 (1963) ("[i]ts function, in the great phrase, is to test 'the legality of the detention of one in the custody of another' "); accord *Allen* v. *McCurry,* 449 U.S. 90, 98 n.12, 101 S. Ct. 441, 66 L. Ed. 2d 308 (1980).

The history of our own jurisprudence is wholly in accord with these principles. "Habeas corpus provides a special and extraordinary legal remedy for illegal detention." *Reed* v. *Reincke,* supra, 594; *McClain* v. *Robinson,* 189 Conn. 663, 668, 457 A.2d 1072 (1983); *In re Juvenile Appeal (Docket No. 9208),* 184 Conn. 157, 167, 439 A.2d 958 (1981); *Mayock* v. *Superintendent,* 154 Conn. 704, 705, 224 A.2d 544 (1966) (per curiam); *Wojculewicz* v. *Cummings,* 143 Conn. 624, 627, 124 A.2d 886 (1956); *Bissing* v. *Turkington,* 113 Conn. 737, 740, 157 A. 226 (1931). The deprivation of legal rights is essential before the writ may be issued. *McPheters* v. *Pollard,* 146 Conn.

509, 510, 152 A.2d 632 (1959). " 'Questions which do not concern the lawfulness of the detention cannot properly be reviewed on habeas corpus.' " *Sanchez* v. *Warden,* 214 Conn. 23, 33, 570 A.2d 673 (1990), quoting *Flaherty* v. *Warden,* 155 Conn. 36, 40, 229 A.2d 362 (1967). When a habeas petition is properly before a court, the remedies it may award depend on the constitutional rights being vindicated. *Gaines* v. *Manson,* 194 Conn. 510, 516, 481 A.2d 1084 (1984). Further, any remedy must be commensurate with the scope of the constitutional violations that have been established.[4] Id., 528.

The gravamen of the petitioner's claim is that his confinement is illegal because the parole board operates in violation of the UAPA's rule-making provisions. For this type of claim of illegal detention to be cognizable in a habeas action, however, the petitioner would, at the very least, have to have some constitutional or statutorily created liberty interest in parole release. In *Greenholtz* v. *Nebraska Penal Inmates,* 442 U.S. 1, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979), and *Board of Pardons* v. *Allen,* 482 U.S. 369, 107 S. Ct. 2415, 96 L. Ed. 2d 303 (1987), the Supreme Court determined when such liberty interests arise and when they do not in the context of parole-release proceedings.

---

[4] Although some of our courts have expanded the scope of prisoners' claims that are cognizable in a habeas action, the well established precepts of illegal detention and deprivation of constitutional rights remain the touchstones of jurisdiction. See, e.g., *Schaffer* v. *Steinert,* 40 Conn. Sup. 251, 252, 490 A.2d 555 (1985) (doubt may be cast on the legality of confinement when there is a deprivation of constitutional rights); *Ciaramelia* v. *Brownell,* 35 Conn. Sup. 117, 118, 399 A.2d 843 (1978) ("the only rights with which the court is concerned are those founded in the constitution or thought to be of a substantial character"); *Dukuly* v. *Warden,* 34 Conn. Sup. 88, 93, 377 A.2d 1344 (1977) ("[i]f the nonjudgmental aspects of restraint lead to restraint that has unconstitutional qualities and properties, a question is raised as to the legality of the detention").

"In *Greenholtz* the Court held that, despite the necessarily subjective and predictive nature of the parole-release decision . . . state [parole-release] statutes may create liberty interests in parole release that are entitled to protection under the Due Process Clause." *Board of Pardons* v. *Allen,* supra, 371. The court also held that the mere "presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release." Id., 373. "The Nebraska statute involved in *Greenholtz* provides as follows: 'Whenever the Board of Parole considers the release of a committed offender who is eligible for release on parole, it *shall* order his release unless it is of the opinion that his release should be deferred because: (a) There is a substantial risk that he will not conform to the conditions of parole; (b) His release would depreciate the seriousness of his crime or promote disrespect for law; (c) His release would have a substantially adverse effect on institutional discipline; or (d) His continued correctional treatment, medical care, or vocational or other training in the facility will substantially enhance his capacity to lead a law-abiding life when released at a later date.' Neb. Rev. Stat. § 83-1, 114 (1) (1981) (emphasis added)." *Board of Pardons* v. *Allen,* supra, 374. The statute also lists fourteen factors the Nebraska parole board must consider in reaching a decision. Id. In finding an infrangible liberty interest, "the Court found significant [the statute's] mandatory language—the use of the word 'shall'—and the presumption created—that parole release *must* be granted unless one of four designated justifications for deferral is found."(Emphasis added.) Id., citing *Greenholtz* v. *Nebraska Penal Inmates,* supra, 11–12.

Similarly, in *Board of Pardons* v. *Allen,* the court found that the state of Montana's parole statute[5] also

---

[5] The Montana statute provides in pertinent part: " 'Prisoners eligible for parole. (1) Subject to the following restrictions, the board *shall* release

gives rise to a liberty interest in parole release based on its use of the "mandatory language ('shall') to 'creat[e] a presumption that parole release will be granted' when the designated findings are made." Id., 377–78, citing *Greenholtz* v. *Nebraska Penal Inmates,* supra, 12. The court also noted that both the Montana statute in *Allen* and the Nebraska statute in *Greenholtz* contained the "substantive predicates" of parole release. *Board of Pardons* v. *Allen,* supra, 379, citing *Hewitt* v. *Helms,* 459 U.S. 460, 472, 103 S. Ct. 864, 74 L. Ed. 2d 675 (1983). Both statutes require an assessment of the effect of release on the inmate and the community, with the focal point being on whether the prisoner can live in society according to law. *Board of Pardons* v. *Allen,* supra, 379–80.

In deciding whether our parole statute, § 54-125, also gives rise to a protected liberty interest in parole release, we scrutinize it under the standards set forth in *Greenholtz.* We note at the outset that § 54-125 states that an inmate "*may* be allowed to go at large in the discretion of the panel of the board of parole for the institution in which the person is confined, if (1) . . . there is reasonable probability that such inmate will live and remain at liberty without violating the law and (2) such release is not incompatible with the welfare of society." (Emphasis added.) Although § 54-125 is similar to the statutes at issue in *Greenholtz* and *Allen*

on parole . . . any person confined in the Montana state prison or the women's correction center . . . when in its opinion there is reasonable probability that the prisoner can be released without detriment to the prisoner or to the community . . . .

"(2) A parole shall be ordered only for the best interests of society and not as an award of clemency or a reduction of sentence or pardon. A prisoner shall be placed on parole only when the board believes that he is able and willing to fulfill the obligations of a law-abiding citizen.' Mont. Code Ann. § 46-23-201 (1985) (emphasis added)." *Board of Pardons* v. *Allen,* 482 U.S. 369, 376–77, 107 S. Ct. 2415, 96 L. Ed. 2d 303 (1987).

in that it, too, contains the "substantive predicates" of parole release, it is unmistakably distinguishable.

Our statute contains no language providing that an inmate *shall* be released if the two statutory criteria are met.[6] It vests broad discretion in the judgment of the parole board. The statute does not give an inmate any right to demand or even apply for parole. It does not require that a parole board actually consider any inmate's eligibility for parole, even if he has fulfilled the statute's two requirements. "The only statutory limits upon the discretion of the board of parole are the requirement that the inmate serve his minimum sentence, that it appear that the inmate will remain at liberty without violating the law, and that the release of the inmate not be incompatible with the welfare of society." *Taylor* v. *Robinson,* 171 Conn. 691, 697–98, 372 A.2d 102 (1976). Our analysis is consistent with our Supreme Court's view in *McLaughlin* v. *Bronson,* 206 Conn. 267, 271, 537 A.2d 1004 (1988), that our commutation statute, § 18-26, "creates no right or entitle-

---

[6] The United States Supreme Court has noted that "statutes or regulations that provide that a parole board 'may' release an inmate on parole do not give rise to a protected liberty interest. See *Dace* v. *Mickelson,* 797 F.2d 574, 576 ([8th Cir.] 1986) (South Dakota statute); *Parker* v. *Corrothers,* [750 F.2d 653, 657 (8th Cir. 1984)] (Arkansas statute); *Gale* v. *Moore,* 763 F.2d 341, 343 ([8th Cir.] 1985) (amended Missouri statute); *Dock* v. *Latimer,* 729 F.2d 1287, 1288 ([10th Cir.] 1984) (Utah statute); *Irving* v. *Thigpen,* 732 F.2d 1215, 1216 ([5th Cir.] 1984) (Mississippi statute); *Candelaria* v. *Griffin,* 641 F.2d 868, 869 ([10th Cir.] 1981) (New Mexico statute); *Williams* v. *Briscoe,* 641 F.2d 274, 276 ([5th Cir.]) (Texas statute), cert. denied, 454 U.S. 854 [102 S. Ct. 299, 70 L. Ed. 2d 147] (1981); *Schuemann* v. *Colorado State Board of Adult Parole,* 624 F.2d 172, 174 ([10th Cir.] 1980) (Colorado statute); *Shirley* v. *Chestnut,* 603 F.2d 805, 806–807 ([10th Cir.] 1979) (Oklahoma statute); *Wagner* v. *Gilligan,* 609 F.2d 866, 867 ([6th Cir.] 1979) (Ohio statute)." *Board of Pardons* v. *Allen,* 482 U.S. 369, 379 n.10, 107, S. Ct. 2415, 96 L. Ed. 2d 303 (1987); see also *Brandon* v. *District of Columbia Board of Parole,* 631 F. Sup. 435, 439–40 (D.D.C. 1986), aff'd, *Brandon* v. *District of Columbia Board of Parole,* 823 F.2d 644 (D.C. Cir. 1987) (District of Columbia Code).

ment that may be claimed by any prison inmate . . . and [bears] no mandates giving rise to a duty to commute a sentence or grant a pardon, or creating a constitutional entitlement to an exercise of clemency." (Citations omitted.) *Connecticut Board of Pardons* v. *Dumschat,* 452 U.S. 458, 466–67, 101 S. Ct. 2460, 69 L. Ed. 2d 158 (1981).

Similar claims against the United States Board of Parole also have proven to be unavailing. In dismissing a habeas challenge to that board's parole release process as violative of the federal Administrative Procedure Act; 5 U.S.C. 701 et seq. (A.P.A.), the United States Court of Appeals for the Fifth Circuit acknowledged that if the parole board is subject to the A.P.A., then its procedures must comport with those required by the act. *Brown* v. *Lundgren,* 528 F.2d 1050, 1053 (5th Cir.), cert denied, 429 U.S. 917, 97 S. Ct. 308, 50 L. Ed. 2d 283 (1976). The Fifth Circuit held, however, that "a prisoner challenging the decision of the board or the process by which that decision was reached must show that the action of the board was so unlawful as to make his custody in violation of the laws of the United States. There must be a sufficient nexus between the allegedly illegal action and the legality of his custody for habeas corpus to lie. A prisoner has no right to release on parole; he has only a statutory right to have the board comply with the A.P.A. and its own rules and guidelines. A departure by the board does not necessarily make his custody illegal." Id., 1054–1055.

In light of these factors, we hold that § 54-125 also creates no protected constitutional or statutory liberty interest in parole release that gives rise to a claim of illegal confinement in a habeas action. Although the petitioner alleged that his confinement was illegal

because the parole board did not adhere to the UAPA's procedures for rule-making, no such liberty interest can arise. The habeas court therefore lacked subject matter jurisdiction. Indeed, it would be utterly incongruous to dismiss an inmate's habeas petition for lack of any right or entitlement to commutation, as in *McLaughlin* v. *Bronson,* supra, while on the other hand permitting a habeas challenge to a parole proceeding by that same inmate, now armed with a protected liberty interest. That the petitioner in this case does not challenge the propriety of his convictions only heightens the absurdity of his claim: One lawfully convicted of a crime, lacking any protected liberty interest in parole release, may nevertheless win his freedom by asserting in a habeas action that his confinement has been made illegal because a parole board allegedly failed to promulgate regulations in accordance with state law. In this respect, the action before us today is not unlike *Nash* v. *Reincke,* 156 Conn. 339, 346–47, 240 A.2d 877, cert. denied, 393 U.S. 884, 89 S. Ct. 192, 21 L. Ed. 2d 159 (1968), where our Supreme Court held that intrastate transfer of an inmate from one prison to another does not constitute illegal detention so as to warrant release. To expand the boundaries of habeas jurisdiction by recognizing a claim such as the one before us today would swallow the writ's central purpose and, as Justice Jackson warned nearly four decades ago, sanction its "progressive trivialization" with even further "farfetched or borderline petitions." *Brown* v. *Allen,* supra, 536 (Jackson, J., concurring in the result).

Since it is clear that an inmate has no liberty interest in or right to parole release, it follows a fortiori that he cannot invoke a court's subject matter jurisdiction in a habeas action by claiming his confinement is illegal based on a parole board's failure to adhere to rule-

making procedures. Unless a liberty interest in parole exists, the procedures followed in the parole determination are not required to comport with standards of fundamental fairness. *Brandon* v. *District of Columbia Board of Parole,* 823 F.2d 644, 648 (D.C. Cir. 1987); *Slocum* v. *Georgia State Board of Pardons & Paroles,* 678 F.2d 940, 942 (11th Cir.), cert. denied, 459 U.S. 1043, 103 S. Ct. 462, 74 L. Ed. 2d 612 (1982). The petitioner's contention that he has a right to parole release because the board failed to adhere to the UAPA's rule-making provisions is utterly lacking in support, in either law or logic, and is "analytically indefensible." *Shango* v. *Jurich,* 681 F.2d 1091, 1100 (7th Cir. 1982); *Brandon* v. *District of Columbia Board of Parole,* supra, 648; accord *Taylor* v. *Robinson,* supra, 698–99.

While we remain mindful of the unique and critically important role of habeas corpus in our jurisprudence, we cannot permit litigants who have no cognizable claim of illegal detention to leapfrog into court by ignoring the threshold element of a habeas action in order to surmount our jurisdictional requirements.

The judgment is affirmed.

In this opinion the other judges concurred.