## EDWARD SMITH *v.* VICTOR LIBURDI
## (9818)

O'CONNELL, FOTI and LANDAU, Js.

Argued September 19—decision released December 17, 1991

*David A. Reif,* special public defender, with whom, on the brief, was *Thomas E. Katon,* for the appellant (petitioner).

*L. D. McCallum,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellee (respondent).

O'CONNELL, J. The petitioner appeals from the denial of his habeas corpus petition which challenged the validity of a detainer lodged against him by California authorities. The petitioner claims that the trial court's dismissal of a request by California authorities for temporary custody mandated dismissal of the underlying detainer. We disagree and affirm the trial court's judgment.

The record discloses that the petitioner was serving a four year sentence in the custody of the Connecticut commissioner of correction. On January 31, 1990,[1] the sheriff of Los Angeles County, California, lodged a certified copy of a felony warrant against the petitioner and requested that he be detained to respond to untried California charges. On that same day, Connecticut correction officials delivered a notice of the California detainer to the petitioner apprising him of his right to request a speedy trial on the California charges. The petitioner refused to acknowledge receipt of the notice and also refused to sign that portion of the notice that constituted a request for appointment of counsel to represent him in the matter. On March 2, 1990, California sought temporary custody of the petitioner by way of a letter from a California assistant district attorney.

The petitioner contested the request for temporary custody and the validity of the underlying detainer. The trial court held that the request for temporary custody was invalid because the copy of the indictment annexed thereto had not been authenticated by the executive authority (i.e., the governor) of California. Additionally, the request did not include a written allegation that the petitioner was present in California when the crime was committed and thereafter fled from that state. General Statutes § 54-159.[2] The court further held that the underlying detainer was unaffected by

---

[1] The defendant's amended habeas corpus petition alleges that the detainer was lodged on January 22, 1990. The difference in dates is irrelevant to this appeal.

[2] General Statutes § 54-159 provides in pertinent part: "No demand for the extradition of a person charged with crime in another state shall be recognized by the governor unless in writing alleging . . . that the accused was present in the demanding state at the time of the commission of the alleged crime, and that thereafter he fled from the state . . . . [The required documents] must be authenticated by the executive authority making the demand."

the defects in the request for temporary custody. The petitioner appeals to this court.

Our analysis begins with an examination of General Statutes § 54-186, in which Connecticut adopted the Interstate Agreement on Detainers (IAD). The purpose of the IAD is to establish a cooperative procedure for disposition of charges against a prisoner in one state who is wanted to respond to untried criminal charges in another state. General Statutes § 54-186, art. I. The IAD is activated when the state seeking the prisoner (the receiving state) files written notice that he is wanted to answer charges in that state. This notice, referred to as a "detainer," is simply " 'a notification filed with the institution in which the prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction.' " *United States* v. *Mauro,* 436 U.S. 340, 359, 98 S. Ct. 1834, 56 L. Ed. 2d 329 (1978).

General Statutes § 54-186, art. III (c), establishes the procedure for informing the prisoner that a detainer has been filed against him together with his right to apply for disposition of the charges without waiting for expiration of his sentence in the sending state.[3] Here, officials from the Connecticut department of correction notified the petitioner of the detainer in compliance with article III (c) but the petitioner declined to respond or to react in any manner. If nothing else had transpired, the detainer would have remained uneventfully on file until the petitioner's term neared completion, at which time California would decide whether to

---

[3] General Statutes § 54-186, art. III (c) provides: "The warden, commissioner of correction or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information or complaint on which the detainer is based."

seek the petitioner's extradition under General Statutes § 54-157 et seq., popularly known as the Uniform Criminal Extradition Act (UCEA).

The petitioner's imprisonment in this state did not remain uneventful, however. California authorities sought to avail themselves of article IV of the IAD, which provides that the receiving state may seek temporary custody of the prisoner for disposition of its charges prior to the normal expiration of the prisoner's sentence.[4] This involuntary transfer of a prisoner from the sending state (Connecticut) to the receiving state (California), even if for only a temporary period implicates the UCEA, General Statutes § 54-157. *Cuyler* v. *Adams,* 449 U.S. 433, 449, 101 S. Ct. 703, 66 L. Ed. 2d 641 (1981).[5]

The petitioner argues that *Cuyler* stands for the proposition that all of a prisoner's extradition rights under the UCEA apply to all sections of the IAD. *Cuyler* is not that broad. The *Cuyler* court recognized that the IAD provides for both voluntary (article III) and involuntary (article IV) interstate transfer of prisoners. That court agreed with the respondent that prisoners who initiate their own transfers pursuant to article III of the IAD are required to waive any right to contest such transfer, but that prisoners subject to involuntary transfers pursuant to article IV are entitled to the "procedural protections of the Extradition Act . . . as well as any other procedural protections the

---

[4] General Statutes § 54-186, art. IV, provides in pertinent part: "The appropriate officer of the jurisdiction in which an untried indictment, information or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party state made available in accordance with article V (a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated . . . ."

[5] In *Cuyler,* the respondent brought action pursuant to 42 U.S.C. § 1983 alleging violation of his rights under the IAD by Pennsylvania officials.

sending state guarantees persons being extradited from within its borders." Id., 448.

The petitioner in *Cuyler* argued that the IAD established a procedure for interstate prisoner transfer that excluded the pretransfer hearing required by the UCEA. The United States Supreme Court disagreed and held that a prisoner's rights to a pretransfer hearing were identical irrespective of whether the involuntary transfer was initiated under article IV of the IAD or under the UCEA. The Supreme Court went on to refer expressly to a prisoner's right to a pretransfer hearing on the receiving state's custody request.[6] Thus, *Cuyler* can be read to support only the narrow proposition that prisoners subject to involuntary transfers are entitled to a pretransfer hearing.

In the present case, the petitioner had his pretransfer hearing on California's temporary custody request and prevailed. The trial court found the custody request defective and ordered the respondent not to transfer the petitioner to California. The petitioner is entitled to no further relief under *Cuyler*. Moreover, he has not furnished us with authority, nor are we aware of any, that automatically converts a defect in a temporary custody request into an invalidation of the underlying detainer. California may again request temporary custody, the next time supported by proper documents. In the meantime, the petitioner returns to the status quo, i.e., a prisoner serving a sentence in the Connecticut penal system against whom a detainer has been filed, which will be triggered by the expiration of his term or a valid request for temporary custody.

Finally, the petitioner argues that the detainer prevents him from participating in the supervised home

---

[6] "The remedial purpose of the Agreement supports an interpretation that gives prisoners the right to a judicial hearing in which they can bring a limited challenge to the receiving state's custody request." *Cuyler* v. *Adams,* 449 U.S. 433, 449, 101 S. Ct. 703, 66 L. Ed. 2d 641 (1981).

release program. Because such matters are beyond the province of this court, we do not address this issue. "Prison classification and eligibility for various rehabilitation programs, wherein prison officials have full discretion to control those conditions of confinement, do not create a statutory or constitutional entitlement sufficient to invoke due process." *Wheway* v. *Warden,* 215 Conn. 418, 431, 576 A.2d 494 (1990), citing *Moody* v. *Daggett,* 429 U.S. 78, 88 n.9, 97 S. Ct. 274, 50 L. Ed. 2d 236 (1976).

The judgment is affirmed.

In this opinion the other judges concurred.