[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
By petition filed April 5, 1999, petitioner seeks a writ of habeas corpus.
At all times material to this petition, petitioner was confined to the custody of the Commissioner of Correction serving an effective sentence of five and one-half years pursuant to sentences imposed on August 29, 1996.
Petitioner's claim arises out of an August 3, 1998 incident for which a subsequent disciplinary hearing was held where petitioner was adjudicated guilty of Causing a Disruption, a Class B offense.
The Court finds the following facts to be relevant to the question of whether petitioner's rights under the Code of Penal Discipline Section 9.5 were violated during the investigation and hearing that followed the August 3 incident:
On August 3, 1998, at approximately 8:15 a.m., petitioner was observed threatening other inmates with violence. Once threatened, the other inmates approached the petitioner. For petitioner's safety, he was escorted to the Operations Lobby by correction officers.
A disciplinary report was written and petitioner received a Class B ticket for Causing a Disruption. Further, he was placed under restrictive housing status. A hearing date of August 11 was set but at some point was continued to August 14 so that an advocate could be obtained for the petitioner.
At that hearing, petitioner was found guilty of Causing a Disruption, and was sentenced to ten days punitive segregation and thirty days confinement to quarters.
On August 17, petitioner was transferred to another correctional facility and subsequently filed a petition for writ of habeas corpus.
 ANALYSIS
Petitioner makes four claims in his petition and each claim will be considered separately. CT Page 9284
In Count I, petitioner claims that sanction limits imposed by Administrative Directive 9.5 of the Code of Penal Discipline (Code) were exceeded as was the authorized term of punitive segregation. Further, that the disciplinary hearing heard on August 14 was not within the seven business days required by the Code.
Administrative Directive 9.5 Section 13B defines Causing a Disruption as a Class B offense. Section 10A2 sets out the authorized sanctions and limits for Class offenses. For a Class B offense, an inmate may receive punitive segregation, forfeiture of good time, and one penalty. Section 10B4 limits punitive segregation in Class B offenses to ten days. Section 10D7 states that a permissible penalty for a Class B offense may be confinement to quarters of up to thirty consecutive calendar days.
After the disciplinary hearing and guilty finding, petitioner was sentenced to ten days punitive segregation and thirty days confinement to quarters which are well within the guidelines established in Administrative Directive 9.5 Section 10A2 and 10B4. Sanction limits were not exceeded.
Because petitioner was in restrictive housing status from August 3 until his transfer on August 17, and because Administrative Directive 9.5 Section 10B4 limits punitive segregation for Class B offenses to ten days, petitioner claims the authorized term of punitive segregation was exceeded. Since Administrative Directive 9.5 Section 20 states that, "if punitive segregation is subsequently imposed any time spent in Administrative Detention shall be credited toward the sentence on a day-for-day basis, " petitioner reasons that he completed his punitive segregation on August 13 which was his tenth day under restrictive housing status. While it is true that petitioner's status should retroactively be deemed to have been punitive segregation from August 3 through August 13, petitioner fails to recognize the difference between administrative detention and punitive segregation, both forms of restrictive housing.
In this case, Lt. Scott Vanoudenhobe testified that the differences between administrative and punitive segregation are limited to a loss of privileges for those in punitive segregation. Prisoners in punitive segregation are housed in the same cells as those in administrative segregation and afforded the same treatment in all other respects. Additionally, because the petitioner's entire sentence of punitive segregation was retroactively applied to a time when he was under administrative detention, petitioner's time served in punitive segregation was no different than if he were in administrative detention. CT Page 9285
In Sandin, an inmate was sentenced to thirty days in disciplinary segregation after a disciplinary hearing. Conditions in disciplinary segregation, with minor exceptions, were the same as those conditions imposed on inmates in administrative segregation. The court held that thirty days in disciplinary segregation did not "present the type of atypical, significant deprivation in which the state might conceivably create a liberty interest" thereby entitling the inmate to the procedural protections of due process. Sandin v. Conner 515 U.S. 472, 431 (1995).
Once petitioner's hearing was heard, and the ten-day sentence in punitive segregation was imposed, it was applied retroactively and petitioner was placed on a transfer detention while awaiting transfer to Osborne Correctional Facility. When the 72-hour limit on the transfer detention expired, petitioner was placed back on administrative detention until he was transferred to Osborne on August 17.
Even if the authorized term of punitive segregation was exceeded by four days as petitioner claims, that would not create an atypical, significant deprivation in which the state might create a liberty interest. Because of the delay in the hearing, petitioner's time spent serving his punitive segregation sentence was no different than if he were in administrative segregation. Further, the authorized term of punitive segregation was not exceeded nor did the time spent there invoke an atypical significant deprivation thereby creating a liberty interest.
Petitioner claims that his disciplinary hearing was not heard within the seven days required by Administrative Directive 9.5 Section 31A. The incident occurred on August 3 and the initial hearing was set down for August 11, the sixth business day. However, because an advocate had not met with the petitioner at least 24 hours prior to the hearing as is required by Section 25 of Administrative Directive 9.5, the hearing was continued to August 14, the ninth business day. While petitioner cites this as a violation of 9.5 Section 31A, he fails to note Section 31C which permits a continuance not to exceed ten business days when good cause can be shown. The right of the petitioner to have adequate time with his advocate is good cause and, therefore, Section 31A was not violated.
In Count II, petitioner states that at the Disciplinary Hearing, the investigating officer did not see the statement of petitioner's prime witness until after a decision had already been rendered. Petitioner further alleged, during the hearing in this matter, that he was not permitted to call inmate witnesses at the disciplinary hearing on August 14. Citing the Sixth and Fourteenth Amendments of the United States Constitution, petitioner claims a denial of due process. While it is true CT Page 9286 that prisoners may not be deprived of life, liberty, or property without due process of law, Haines v. Kerner, 404 U.S. 519 (1972), "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Morrissey v. Brewer; 408 U.S. 471, 488 (1972). While an inmate "should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals "Wolff v. McDonnell;418 U.S. 539, 566 (1974), such is not always the case and prison officials and staff must be given the discretion to refuse to call witnesses when doing so might undermine authority or pose a risk to the prison environment. A balance that requires some accommodation and flexibility between the inmate's interests in liberty against the needs of the prison is necessary. The right to confront and cross-examine could pose serious hazards to the interests of the correctional facility and the Constitution does not impose such rights on inmates. In prison disciplinary cases, adequate bases for decisions can be made without cross-examination. Id. @ 566 567.
"The unrestricted right to call witnesses from the prison population carries obvious potential for disruption" id. @ 566 and liberty interests "must be accommodated in the distinctive setting of a prison, where disciplinary proceedings take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so." Superintendent v.Hill; 472 U.S. 445 @ 454 (1985) citing Cafeteria Workers v. McElroy,367 U.S. 886 @ 895 (1961). "The fact that prisoners retain rights under the due process clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed." Wolff v. McDonnell, supra, 556.
The required threshold to uphold a prison disciplinary board's decision is that some evidence must support its decision. Superintendent v. Hill, supra, 455. Even if there had been a statement by inmate Shankle and that statement were not considered by the disciplinary hearing officer, there was already some evidence to support the decision and, therefore, not considering Shankle's statement would have been harmless. However, according to the Disciplinary Process Report, petitioner never provided his prime witness's name to the investigator or advocate. Therefore, petitioner's claim that the witness statement was read only after the hearing concluded is without merit. Because the witness was never identified, no statement could be obtained.
In Count III, petitioner's claim that his property was lost when he was placed in administrative detention is not a cognizable claim of illegal detention and, therefore, this court is Without subject matter CT Page 9287 jurisdiction. Vincenzo v. Warden, 26 Conn. App. 132 (1991).
Because no probative testimony or evidence regarding petitioner's claim in Count IV regarding the appellate procedure for disciplinary action was offered, that claim is decided adversely to petitioner.
 SUMMATION
The disciplinary procedure and sanctions as applied to petitioner were in compliance with the Code of Penal Discipline and, therefore, the petition for writ of habeas corpus is denied.
 Stuart M. Schimelman Judge