RONALD J. HICKEY *v.* COMMISSIONER OF CORRECTION
(AC 23561)

Schaller, Dranginis and DiPentima, Js.

Argued December 9, 2003—officially released March 16, 2004

*Sandra J. Crowell*, deputy assistant public defender, for the appellant (petitioner).

*Steven R. Strom*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (respondent).

*Opinion*

DRANGINIS, J. The issue in this habeas corpus appeal is whether the petitioner, who is incarcerated in another state, is in the custody of the respondent commissioner of correction (commissioner) with respect to the unserved portion of a 1991 Connecticut sentence. Because the petitioner is an alleged parole escapee and the state has not lodged a detainer for his return to this state when he completes his out-of-state sentence, we conclude that he is not in the custody of the commissioner and that the habeas court lacked subject matter jurisdiction over the petition for a writ of habeas corpus.

The petitioner, Ronald J. Hickey, appeals from the judgment of the habeas court that denied his motion to reconsider its order dismissing without prejudice his petition for a writ of habeas corpus. The petitioner appealed, claiming that it was improper for the court (1) to dismiss his petition for a writ of habeas corpus pursuant to Practice Book § 23-29 (1) and (4),[1] and (2) to conduct a hearing on the state's motion to dismiss his habeas petition in his absence in contravention of Practice Book § 23-40. We affirm the judgment of the habeas court.

The following procedural history is relevant to our review. The petitioner, acting pro se, filed a petition for a writ of habeas corpus in the judicial district of Hartford on March 20, 2000.[2] The petition was submitted on what appears to be a modified standard form, issued by the state of Arizona, for postconviction relief. The petition represented that he is confined by the Arizona department of correction in Florence, Arizona.

According to his affidavit accompanying the petition, the petitioner was sentenced in Connecticut on October 17, 1991, to two years in the custody of the commissioner pursuant to a plea of no contest to three informations. On October 30, 1992, the petitioner entered a community release program and reported weekly to an officer. The petitioner claims that he had received permission from his release officer to move to Florida to accept employment there. The release officer allegedly told him that if he stayed out of trouble, the officer would sign the release papers when the petitioner completed his sentence. The petitioner eventually moved

[1] Practice Book § 23-29 provides in relevant part: "The judicial authority may, at any time . . . upon motion of the respondent, dismiss the petition . . . if it determines that: (1) the court lacks jurisdiction . . . [or] (4) the claims asserted are moot or premature . . . ."

[2] The petitioner was represented by counsel in the habeas court and on appeal.

to Arizona and became involved in unrelated criminal activity.

When the petitioner was arrested, the Arizona authorities informed him that interstate law enforcement records identified him as an escapee from the commissioner's custody. According to the petitioner, his status as an escapee negatively influenced the Arizona sentence he received and the conditions under which he now is incarcerated.[3] He claims that he is entitled to habeas relief because, among other reasons, the release officer filed a false report of escape. The petitioner seeks relief in the alternative: To be released from custody and discharged, to have his sentenced corrected or to be charged with escape and tried.

The commissioner filed a motion to dismiss the petition, arguing that because the petitioner had escaped from a community release program prior to completing his sentence, he is not entitled to habeas relief. See *Valle* v. *Commissioner of Correction*, 244 Conn. 634, 635, 711 A.2d 722 (1998) (petitioner absent from legal custody without leave disentitled to petition court to determine habeas corpus claims).[4] In the alternative,

---

[3] "Prison classification and eligibility for various rehabilitation programs, wherein prison officials have full discretion to control those conditions of confinement, do not create a statutory or constitutional entitlement sufficient to invoke due process. *Wheway* v. *Warden*, 215 Conn. 418, 431, 576 A.2d 494 (1990), citing *Moody* v. *Daggett*, 429 U.S. 78, 88 n.9, 97 S. Ct. 274, 50 L. Ed. 2d 236 (1976)." (Internal quotation marks omitted.) *Smith* v. *Liburdi*, 26 Conn. App. 254, 259, 600 A.2d 17 (1991), cert. denied, 221 Conn. 910, 602 A.2d 9 (1992).

"In applying federal habeas statutes, the United States Supreme Court has said that [t]he purpose of the proceeding defined by the statute was to inquire into the legality of the detention . . . . There is no warrant in either the statute or the writ for its use to invoke judicial determination of questions which could not affect the lawfulness of the custody and detention, and no suggestion of such a use has been found in the commentaries of the English common law." (Internal quotation marks omitted.) *Vincenzo* v. *Warden*, 26 Conn. App. 132, 136, 599 A.2d 31 (1991).

[4] The court concluded that whether the petitioner was an escapee pertained to the merits of his petition.

the commissioner argued, pursuant to Practice Book § 23-29 (4), that the petition should be dismissed because it is moot, as there is no practical relief that can be afforded the petitioner.[5]

The court heard oral argument from counsel on the commissioner's motion to dismiss. No evidence, however, was presented to the court. The court considered the motion on the basis of counsel's factual representations and their memoranda of law and oral arguments.[6] The petitioner did not attend the hearing as he is serving the Arizona sentence, which will not be completed until 2016. With respect to his 1991 sentence, the petitioner allegedly has 147 days to serve, but there is no outstanding detainer for his return to this state. The court concluded that it had no jurisdiction to compel the petitioner to be brought before it, as the petitioner is not in the commissioner's custody, and the Arizona warden cannot be ordered to bring the petitioner to Connecticut. The court dismissed the petition without prejudice, concluding, pursuant to Practice Book § 23-29 (1) and (4),[7] that it lacked subject matter jurisdiction

---

[5] The court did not conclude that the petition was moot, but rather that it was premature.

[6] It is apparent from the transcript that the court and counsel had discussed the petition and facts prior to the date of the hearing. The court rendered an oral decision at the conclusion of the hearing and ordered a transcript of the proceedings, which it signed in accordance with Practice Book § 64-1 (a).

The court made no findings of fact on the record, and the parties sought no articulation from the court. See Practice Book § 66-5. Nonetheless, we are able to infer from the transcript of the hearing the facts on which the court's decision appears to have been based, which are consistent with the facts stated in the parties' briefs. See *Gryskiewicz* v. *Morgan*, 147 Conn. 260, 261, 159 A.2d 163 (1960) (where plaintiff requested no finding and none was made, only record available for review). In the absence of an articulation, we may presume that the court made the necessary findings of fact. See *Zadravecz* v. *Zadravecz*, 39 Conn. App. 28, 32, 664 A.2d 303 (1995).

[7] Given the relatively short amount of time the petitioner has to serve on his 1991 conviction, the court ordered that if he returns to this state and files another petition for a writ of habeas corpus related to that sentence, the petition is to be heard within five days of its being filed.

and that the petition was premature. The petitioner filed this appeal after the court granted his petition for certification to appeal.

I

The petitioner claims that it was improper for the court to dismiss his petition for a writ of habeas corpus on the grounds that it lacked jurisdiction and the petition was premature pursuant to Practice Book § 23-29 (1) and (4), respectively. We disagree.

The petitioner claims that it was improper for the court to conclude that it lacked jurisdiction to consider his petition for a writ of habeas corpus, relying on *Garlotte* v. *Fordice*, 515 U.S. 39, 115 S. Ct. 1948, 132 L. Ed. 2d 36 (1995), and *Braden* v. *30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 93 S. Ct. 1123, 35 L. Ed. 2d 443 (1973), to support his claim. The federal cases on which the petitioner relies define custody as it relates to consecutive sentences to be served; they do not apply, however, to an escapee from parole against whom no detainer has been lodged. *Frazier* v. *Wilkinson*, 842 F.2d 42, 45 (2d Cir.), cert. denied, 488 U.S. 842, 109 S. Ct. 114, 102 L. Ed. 2d 88 (1988), which articulated the reasonable basis standard, is controlling. See also *Simmonds* v. *Immigration & Naturalization Service*, 326 F.3d 351, 354 (2d Cir. 2003) (discussing custody as jurisdictional prerequisite in habeas corpus proceedings).

First, we address the applicable standard of review. "A court has subject matter jurisdiction if it has the authority to hear a particular type of legal controversy. This jurisdiction relates to the court's competence to exercise power." *Vincenzo* v. *Warden*, 26 Conn. App. 132, 134–35, 599 A.2d 31 (1991). "The conclusions reached by the trial court in its decision to dismiss the habeas petition are matters of law, subject to plenary review. . . . Thus, [w]here the legal conclusions of the

court are challenged, we must determine whether they are legally and logically correct . . . and whether they find support in the facts that appear in the record." (Internal quotation marks omitted.) *Smith* v. *Commissioner of Correction*, 65 Conn. App. 172, 175, 782 A.2d 201 (2001).

"Subject matter jurisdiction for adjudicating habeas petitions is conferred on the Superior Court by General Statutes § 52-466, which gives it the authority to hear those petitions that allege illegal confinement or deprivation of liberty." *Abed* v. *Commissioner of Correction*, 43 Conn. App. 176, 179, 682 A.2d 558, cert. denied, 239 Conn. 937, 684 A.2d 707 (1996). Section 52-466 provides in relevant part that "(a) [a]n application for a writ of habeas corpus shall be made to the superior court . . . for the judicial district in which the person whose *custody* is in question is claimed to be illegally confined or deprived of his liberty . . . . (c) The writ shall be directed to some proper officer to serve and return, who shall serve the same by putting a true and attested copy of it into the hands of the person who has the *custody of the body* of the person who is directed to be presented upon the writ. . . ." (Emphasis added.)

The jurisprudential history of our habeas corpus statute is consistent with the English common-law principles of the Great Writ and the federal habeas corpus statute.[8] *Vincenzo* v. *Warden*, supra, 26 Conn. App. 136–37. In discussing the federal statute, "the United States Supreme Court has said that [t]he purpose of the proceeding defined by the statute was to inquire into the legality of the detention . . . . There is no warrant in either the statute or the writ for its use to invoke judicial determination of questions which could not affect the lawfulness of the *custody* and detention, and no suggestion of such a use has been found in the commentaries

---

[8] See 28 U.S.C. § 2241 et seq.

on the English common law." (Emphasis added; internal quotation marks omitted.) Id., 136.

In this case, the court concluded that it lacked jurisdiction to issue a writ of habeas corpus because the petitioner was not in Connecticut and that it did not have authority to compel the Arizona warden to bring the petitioner before it. The issue is, however, whether the petitioner is in the commissioner's *custody*, despite his incarceration in Arizona. We conclude that in the absence of a detainer to return the petitioner to Connecticut, he is not in the custody of the commissioner, and the court, therefore, lacked jurisdiction to consider his petition for a writ of habeas corpus.

"The writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be an unlawful custody. . . . In the classic statement: The important fact to be observed in regard to the mode of procedure upon this writ is, that it is directed to, and served upon, not the person confined, but his jailer. It does not reach the former except through the latter. The officer or person who serves it does not unbar the prison doors, and set the prisoner free, but the court relieves him by compelling the oppressor to release his constraint. The whole force of the writ is spent upon the [custodian]." (Citation omitted; internal quotation marks omitted.) *Braden* v. *30th Judicial Circuit Court of Kentucky*, supra, 410 U.S. 494–95.

"So long as the custodian can be reached by service of process, the court can issue a writ within its jurisdiction requiring that the prisoner be brought before the court for a hearing on his claim, or requiring that he be released outright from custody, even if the prisoner himself is confined outside the court's territorial jurisdiction." (Internal quotation marks omitted.) Id., 495. A writ of habeas corpus "assures among other things

that a prisoner may require his jailer to justify the detention under the law." *Peyton* v. *Rowe*, 391 U.S. 54, 58, 88 S. Ct. 1549, 20 L. Ed. 2d 426 (1968).

Section 52-466 directs the court in the judicial district in which the petitioner is confined to issue a writ to be served on the person having custody of the petitioner. Here, the commissioner has not questioned the court's personal jurisdiction over him; he challenges whether the petitioner is in custody.

"The federal habeas statute [28 U.S.C. § 2241 et seq.] gives United States district courts jurisdiction to entertain petitions for habeas relief only from persons who are *in custody* in violation of the Constitution or laws or treaties of the United States." (Emphasis in original; internal quotation marks omitted.) *Maleng* v. *Cook*, 490 U.S. 488, 490, 109 S. Ct. 1923, 104 L. Ed. 2d 540 (1989). "[A] prisoner serving consecutive sentences is in custody under any one of them for purposes of [28 U.S.C.] § 2241 (c) (3)." (Internal quotation marks omitted.) *Peyton* v. *Rowe*, supra, 391 U.S. 67. In *Peyton*, the prisoners sought a writ of habeas corpus to challenge a sentence to be served in the future. *Garlotte* v. *Fordice*, supra, 515 U.S. 40–41. *Garlotte*, which is *Peyton* in reverse, held that a prisoner may attack a prior consecutive sentence if a successful challenge will shorten the length of his current detention. Id., 47.[9]

The petitioners in *Peyton* were prisoners serving consecutive state sentences in the commonwealth of Virginia. The federal rule that views state "consecutive sentences in the aggregate"; id.; also applies to situations in which a prisoner serving a sentence in one state files a petition for a writ of habeas corpus challenging a consecutive conviction rendered in a different juris-

---

[9] But see *Maleng* v. *Cook*, supra, 490 U.S. 492 (prisoner may not bring habeas petition to challenge prior sentence if it expired before petition was filed).

diction or in which a prisoner is subject to an out-of-state detainer. See *Braden* v. *30th Judicial Circuit Court of Kentucky*, supra, 410 U.S. 498–99.

During the hearing on the petition, the court and counsel discussed at length the court's inability to bring the petitioner into the courtroom for a hearing on the petition. See part II. The court concluded that because the petitioner was not in Connecticut, it did not have in personam jurisdiction. Under the federal rule, which this court looks to for guidance, the mere fact that a petitioner is serving a consecutive sentence outside Connecticut, rather than within the state, does not deprive the court of jurisdiction for purposes of habeas corpus to determine whether the commissioner is holding the petitioner illegally. In this instance, because Connecticut has not served a detainer on the Arizona jailer to return the petitioner to this state to complete the 147 days of his 1991 sentence, there is a reasonable basis to conclude that the petitioner is not in custody. See *Frazier* v. *Wilkinson*, supra, 842 F.2d 45.

"In *Frazier*, [the United States Court of Appeals for the Second Circuit] reviewed the history of the Supreme Court's break from its previous rigid rule that habeas petitions may only be directed to the legality of a prisoner's current confinement. . . . Whereas the Supreme Court . . . had recognized custody in a future jailor only where the immediate custodian, through the lodging of a detainer, was acting as an agent for the future jailor by holding the prisoner pursuant to the detainer, *Frazier* dispensed with the requirement that a detainer be in place." (Citations omitted.) *Simmonds* v. *Immigration & Naturalization Service*, supra, 326 F.3d 355. *Frazier* makes a distinction between the presence and absence of a detainer in cases concerning parole violation. See *Frazier* v. *Wilkinson*, supra, 842 F.2d 45.

"In *United States ex rel. Meadows* v. *New York*, 426 F.2d 1176 (2d Cir. 1970), cert. denied, 401 U.S. 941, 91

S. Ct. 944, 28 L. Ed. 2d 222 (1971), a prisoner serving a federal sentence sought habeas corpus to challenge a prior New York conviction. New York had paroled the petitioner and then issued a parole violation warrant after learning that he was wanted on federal charges. After [the] petitioner was placed in federal custody, New York lodged a parole detainer against him with the federal authorities. [The United States Court of Appeals for the Second Circuit] ruled that the detainer satisfied the *in custody* requirement of section 2241 (c) (3) because it represent[ed] a present claim by New York of jurisdiction over [the petitioner's] person and of the right to subject him to its orders and supervision in the future. . . .

"*Dodd* v. *United States Marshal*, 439 F.2d 774 (2d Cir. 1971), represents the inverse of *Meadows*. Like [the petitioner in *Meadows*], Dodd was serving a federal sentence and sought habeas corpus to challenge a prior state (Washington) sentence from which he had been released on parole. Unlike [the petitioner in *Meadows*], however, Dodd was not subject to a detainer issued by Washington authorities. [The Second Circuit] distinguished *Meadows* on this basis and held that Dodd was not *in custody* of the state officials in the absence of a detainer and that the District Court lacked habeas jurisdiction over his challenge to the Washington conviction." (Citation omitted; emphasis added; internal quotation marks omitted.) *Frazier* v. *Wilkinson*, supra, 842 F.2d 44–45.

The Second Circuit "think[s] that habeas corpus may be used as long as there is a reasonable basis to apprehend that the jurisdiction that obtained the consecutive sentence will seek its enforcement. As the Supreme Court pointed out in *Peyton*, the interests of both the petitioner and the state are served by permitting habeas challenges to consecutive sentences prior to the commencement of their service. The policies of the Great

Writ are surely not served by permitting a state to postpone, perhaps for many years, a challenge to its consecutive sentence by the simple expedient of deferring the filing of a detainer until close to the end of the initial sentence.[10]

"The absence of a detainer should not have the controlling significance in the context of a consecutive sentence that [the Second Circuit] accorded it in the context of parole violation in *Meadows* and *Dodd*. When a state paroles a prisoner, it is by no means certain that it will expend resources to return him to its custody for service of an unexpired sentence because of a conviction in another jurisdiction. . . . With a consecutive sentence, however, the absence of a detainer rarely leaves a state's intention in doubt. There is normally an expectation that a state imposing a consecutive sentence will insist that it be served." Id., 45.

As the habeas court implied in its remarks, it is doubtful that Connecticut will seek to obtain custody of the petitioner, who will be incarcerated in Arizona until 2016, to complete the 147 days of his 1991 sentence. The court took pains to protect the interest of the petitioner by denying the petition without prejudice and ordering that if he returns to Connecticut and files a petition with respect to the 1991 sentence, it is to be

---

[10] The United States Supreme Court favors the early resolution of petitions for writs of habeas corpus regardless of where the prisoner is incarcerated or where the sentence he is challenging was imposed. See *Peyton* v. *Rowe*, supra, 391 U.S. 62–64. That court has sanctioned the resolution of a petition without the presence of the prisoner before the court that adjudicates his claims. *Braden* v. *30th Judicial Circuit Court of Kentucky*, supra, 410 U.S. 498, citing *Walker* v. *Johnston*, 312 U.S. 275, 284, 61 S. Ct. 574, 85 L. Ed. 830 (1941). "Under some authority, the body of the person detained must be produced with the writ; but production in court of the person detained is not a prerequisite to jurisdiction and in a proper case may be excused or dispensed with. Subject to applicable statutory provisions the party detained, during the pendency of the proceedings, is under the custody and control of the court which issued the writ." 39A C.J.S. 85, Habeas Corpus § 185 (1976); but see part II of this opinion.

heard within five days. The court therefore properly dismissed the petition for a writ of habeas corpus pursuant to Practice Book § 23-29 (1).[11]

## II

The petitioner's second claim is that pursuant to Practice Book § 23-40, it was not proper for the court to conduct a hearing on the commissioner's motion to dismiss the petition in his absence.[12] The petitioner's claim is unpersuasive.

The court dismissed the petition for a writ of habeas corpus, in part, because the petitioner is not in Connecticut and it had no means to bring him before the court. Practice Book § 23-40 provides, however, that a habeas corpus petitioner *shall* have a right to be present for oral argument on a question of law that may be dispositive of the case.[13] The petitioner correctly notes that our Supreme Court has held that the word *shall* is mandatory. See *State* v. *Cook*, 183 Conn. 520, 522–23, 441 A.2d 41 (1981). The petitioner argues, as he did in the habeas court, that the court should have invoked General Statutes § 54-82i to secure his presence.[14] The problem with

[11] Because we conclude that the court properly dismissed the petition for lack of subject matter jurisdiction, we need not address the petitioner's claim that it was improper for the court to dismiss the petition as premature. See Practice Book § 23-29 (4). We agree that the United States Supreme Court overruled the prematurity doctrine in *Peyton* v. *Rowe*, supra, 391 U.S. 54. But see *Simmonds* v. *Immigration & Naturalization Service*, supra, 326 F.3d 357, for a discussion of the doctrine of prudential ripeness.

[12] Practice Book § 23-40 (a) provides in relevant part: "The petitioner . . . shall have the right to be present at any evidentiary hearing and at any hearing or oral argument on a question of law which may be dispositive of the case, unless the petitioner . . . waives such right or is excused by the judicial authority for good cause shown. . . ."

[13] A petitioner may waive his right to be present or may be excused by the court for good cause. See footnote 12.

[14] General Statutes § 54-82i (c) provides in relevant part: "If a person in any state, which by its laws has made provision for commanding persons within its borders to attend and testify in *criminal prosecutions* or in *grand jury investigations* commenced or about to commence in this state, is a material witness in a prosecution pending in a court of record in this state, or in a grand jury investigation which has commenced or is about to com-

his argument is that § 54-82i only applies to criminal and grand jury proceedings; habeas corpus proceedings are civil in nature. *Collins* v. *York*, 159 Conn. 150, 153, 267 A.2d 668 (1970).

We resolve the petitioner's claim by means of statutory construction, which also applies to our interpretation of our rules of practice. *State* v. *Cook*, supra, 183 Conn. 521. Our review is plenary because statutory construction is a question of law. *State* v. *Sanchez*, 75 Conn. App. 223, 232, 815 A.2d 242, cert. denied, 263 Conn. 914, 821 A.2d 769 (2003).

"The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Spears* v. *Garcia*, 263 Conn. 22, 27–28, 818 A.2d 37 (2003).

Section 54-82i is Connecticut's adoption of the 1936 revision of the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings (act). "A court can properly consider the official comments as well as the published comments of the drafters as a source for determining the meaning of an ambigu-

---

mence, a judge of such court may issue a certificate under seal of the court, stating such facts and specifying the number of days the witness will be required. Such certificate may include a recommendation that the witness be taken into immediate custody and delivered to an officer of this state to assure the attendance of the witness in this state. . . ." (Emphasis added.)

ous provision [of a uniform act.]" (Internal quotation marks omitted.) *Yale University* v. *Blumenthal*, 225 Conn. 32, 38, 621 A.2d 1304 (1993). Decisions from other states also are valuable aids for interpreting the provisions of uniform laws. See *Cain* v. *Moore*, 182 Conn. 470, 473, 438 A.2d 723 (1980), cert. denied, 454 U.S. 844, 102 S. Ct. 157, 70 L. Ed. 2d 129 (1981).

The prefatory note to the 1936 revision explains the purpose of the act. "This act should be adopted by every state. Its adoption will facilitate the administration of the criminal law. Officers engaged in the enforcement of criminal laws have long contended that there should be some statutory authority for securing the attendance of a *witness from without the state in which the criminal proceeding is pending*." (Emphasis added.) 11 Uniform Laws Annotated, Uniform Act to Secure Attendance of Witnesses from Without a State in Criminal Proceedings, prefatory note, p. 3 (West 2003).[15]

The act is a matter of comity between the several states, "an end particularly to be cherished when the object is enforcement of internal *criminal* laws . . . ." (Emphasis added.) *New York* v. *O'Neill*, 359 U.S. 1, 11–12, 79 S. Ct. 564, 3 L. Ed. 2d 585 (1959). The act "is reciprocal. It is operative only between States which have enacted it or similar legislation for compelling of witnesses to travel to, and testify in, sister States. The terms of the statute make quite clear the procedures to be followed. The judge of the court of the requesting State files in any court of record in the State in which the witness may be found a certificate stating the necessity of the appearance of such witness in a *criminal prosecution* or *grand jury investigation* in the requesting State." (Emphasis added.) Id., 4.

---

[15] The act is a matter of comity between states to enable them to obtain material witnesses for criminal prosecutions. See annotations to 11 Uniform Laws Annotated, Uniform Act to Secure Attendance of Witnesses from Without a State in Criminal Proceedings § 1, p. 9 (West 2003) (purpose of act).

The prefatory comments and the case law interpreting the act are consistent with its clear language that its purpose is to secure the presence of witnesses for criminal and grand jury proceedings. "No such similar power exists in civil cases, and it is generally recognized that a court cannot compel the attendance of a witness who is beyond the court's jurisdiction. See [97] C.J.S. [367] Witnesses § 17 (1957)." *Thomas* v. *Pacheco*, 293 Ark. 564, 570, 740 S.W.2d 123 (1987).

The petitioner argues that the habeas court should have utilized § 54-82i because Arizona treats a petition for habeas corpus as postconviction relief, a criminal proceeding. At common law, the judicial authority of one state could not command the presence of a witness not within its territorial jurisdiction. See *State* v. *DeFreitas*, 179 Conn. 431, 441, 426 A.2d 799 (1980). "It is a rule of statutory construction that statutes in derogation of the common law should be strictly construed so as not to extend, modify or enlarge [their] scope by the mechanics of statutory construction." (Internal quotation marks omitted.) *Brennan* v. *Burger King Corp.*, 46 Conn. App. 76, 82–83, 698 A.2d 364 (1997), aff'd, 244 Conn. 204, 707 A.2d 30 (1998). To invoke § 54-82i (c), a court must certify that the person sought from outside the state is a material witness in a criminal prosecution or grand jury proceeding. Although the petitioner may be a material witness in his habeas corpus proceeding, such a proceeding in Connecticut is not a criminal one.[16]

---

[16] In his brief, the petitioner attempted to bolster his argument by claiming that the habeas court previously had signed an order under the act to secure a Connecticut resident to testify in a postconviction matter in the criminal division of the court of common pleas for the commonwealth of Pennsylvania. That argument was not raised at the habeas hearing, and the material to support it contained in the petitioner's appendix was not entered into evidence or marked for identification in the habeas court. We therefore do not consider the argument or the material in the appendix. See *State* v. *Harrison*, 34 Conn. App. 473, 490, 642 A.2d 36, cert. denied, 231 Conn. 907, 648 A.2d 157 (1994).

For the foregoing reasons, the court properly dismissed the petition for a writ of habeas corpus in the petitioner's absence.[17]

The judgment is affirmed.

In this opinion the other judges concurred.

[17] The petitioner also argued, on the basis of footnote 8 in *Miller* v. *Commissioner of Correction*, 242 Conn. 745, 759 n.8, 700 A.2d 1108 (1997), that General Statutes § 54-82i previously was used to secure testimony from an out-of-state prisoner at a habeas corpus proceeding. The footnote does not indicate the procedural or legal mechanism used to secure the testimony of the material witness who was incarcerated in New York.