[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On April 24, 2000, the petitioner filed an amended petition, which alleges that the respondent warden deprived him of his Fourteenth Amendment right to due process. The amended petition also raises an equal protection claim that the petitioner was subject to invidious discrimination in violation of the Fourteenth Amendment's equal protection clause. The petitioner also alleges that because he assaulted someone within the Department of Correction, he was subject to retaliation. Lastly, the petitioner claims that he was intentionally deprived of his right to appeal the disciplinary reports and that the appeal process is inadequate. All claims arise from events which resulted in the petitioner receiving six disciplinary reports, as well as the imposition of sanctions, including punitive segregation, loss of good time and loss of various privileges. The petitioner seeks restoration of the forfeited good time credits and to have the disciplinary reports expunged from his records. The respondent warden denies the petitioner's claims and asserts that the petitioner was afforded all constitutional protections throughout all proceedings at issue in this habeas corpus petition.
"Habeas corpus provides a special and extraordinary legal remedy for illegal detention. The deprivation of legal rights is essential before the writ may be issued. Questions which do not concern the lawfulness of the detention cannot properly be reviewed on habeas corpus. When a habeas petition is properly before a court, the remedies it may award depend on the constitutional rights being vindicated. Further, any remedy must be commensurate with the scope of the constitutional violations that have been established." (Internal citations and quotation marks omitted.)Vincenzo v. Warden, 26 Conn. 132, 137-38, 599 A.2d 31 (1991).
"A prison inmate can be deprived of his statutory good time credit only if he is offered procedural due process protection. See Superintendentv. Hill, 472 U.S. 445, 453, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985); Wolffv. McDonnell, 418 U.S. 539, 558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). CT Page 12511 Thus, when a prison inmate is threatened with a loss of statutory good time credits, the inmate must receive (1) advanced written notice of the disciplinary charges, (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and to present documentary evidence in his defense and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action.
"Due process is satisfied if the prison disciplinary board shows some evidence that supports the revocation of good time credit. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." (Internal citations and quotation marks omitted.) Jolley v. Commissioner of Correction, 60 Conn. App. 560, 561,760 A.2d 146 (2000).
On April 14, 1999, the petitioner received five disciplinary reports (hereafter "April 14, 1999 reports") for Fighting, Flagrant Disobedience, Assault on a Department of Correction Employee and Threats.[1] Resp't Ex. A-E. On April 19, 1999, the petitioner also received a disciplinary report (hereafter "April 19, 1999 report") for Interfering with Safety and Security. While the petitioner denies that he assaulted a correction officer and that he threatened the Department of Correction, the petitioner does not specifically deny the other events which resulted in disciplinary reports.
The disciplinary reports entered into evidence as full exhibits show the following sequence of events. On April 14, 1999, at 12:20 P.M., Officer Burris observed the petitioner and another inmate engaging in physical combat in a bathroom/shower area. Resp't Ex. E, at 6. Additional officers responded to remove the two combatants. Id. The responding officers were able to restrain and remove the other inmate without incident. Id. One of the responding officers, Officer Papallo, attempted to restrain the petitioner, but the petitioner resisted and struck Officer Papallo in the shoulder and chest with his elbow and pushed Officer Papallo with sufficient force to make him lose his balance and slam into a wall. Resp't Ex. A, at 4. The petitioner also called Officer Papallo "a faggot" and "a fucking punk," stating that he would "kill" Officer Papallo and that he would "get him, you wait and see." Resp't Ex. E, at 6.
The petitioner was then taken to the restrictive housing unit. Resp't Ex. D, at 6. At approximately 12:30 P.M., April 14, 1999, the petitioner CT Page 12512 stated the following, referring to Office Papallo: "I am fucking up that officer." Four correction officers witnessed the petitioner's threat.Id. On April 14, 1999, at 6:00 P.M., state trooper Sawyer met with the petitioner so that he could be interviewed and fingerprinted. Resp't Ex. B, at 6. The petitioner refused to comply with orders and offered physical resistance to being fingerprinted, necessitating the use of force to countermeasure the petitioner's noncompliance and physical resistance. Id.
On April 15, 1999, Officer Candelaria, the investigator assigned to the disciplinary reports in this matter, met with the petitioner and attempted to interview him regarding all five April 14, 1999 incidents. Resp't Ex. A-E. The petitioner at first acknowledged Officer Candelaria's presence by briefly looking at the officer, but then covered his face and completely ignored Officer Candelaria. Id. The Disciplinary Investigation Reports completed by Officer Candelaria all show that the petitioner refused an advocate and was uncooperative in signing the reports. Id.
On April 22, 1999, a hearing was conducted before hearing officer Lt. Meulemans. The petitioner "was removed from the hearing prior to adjudication due to his aggressive responses at [the] hearing and finally his being disrespectful to [the hearing officer conducting the hearing]." Resp't Ex. B, D E, at 2. Based on the petitioner's self-admissions, confidential information, documentation presented to the hearing officer and staff witnesses, the petitioner was found guilty in all five April 14, 1999 disciplinary reports.
At the habeas corpus trial, this court heard testimony from the petitioner, Officer Burris, Lt. Meulemans and Officer Candelaria. The petitioner testified that he both requested witnesses and an advocate, but that Officer Candelaria, the officer investigating the incidents, refused the petitioner's requests and refused to take his statement. Tr. (June 27, 2002), at 15-16. The petitioner additionally testified that he made it clear at the disciplinary hearing that he had witnesses and that he wanted an advocate. Id., at 16. The petitioner also testified that he wanted to utilize a videotape made by the Department of Correction on April 14, 1999, which, according to the petitioner, would show that he did not assault the correction officer and did not threaten anyone in the Department of Correction. Id., at 14. The videotape was, however, not available to the petitioner at the disciplinary hearing. Id. The petitioner also testified that he appealed the decisions, but that the respondent allegedly lost the appeal, afterwhich the petitioner appealed again, though he never heard anything about either appeal. Id., at 16.
Officer Burris testified that she observed the petitioner and another CT Page 12513 inmate fighting in shower area of the bathroom. Id., at 24. Officer Burris also testified that she pulled the petitioner and the other inmate one-by-one out of the unit and called for backup. Id., at 25. The petitioner then became resistant. Id. After one of the petitioner's hands was handcuffed, the petitioner started swinging his cuffed hand with the one free cuff acting as a de facto weapon at the end of his cuffed hand.Id., at 25-26. Additional officers responded and the petitioner was ordered to assume a prone position, but continued offering resistance, so that the officers were forced to cuff the petitioner because he refused to give up; Id., at 26; and was very hostile. Id., at 27.
Lt. Meulemans, who has been working as a disciplinary hearing officer since December of 1995 and presided over the hearing on the April 14, 1999 incidents, testified in detail about the disciplinary report process. Id., at 35-42. Lt. Meulemans testified that he gives inmates every opportunity to present their defenses, but that the opportunity to speak at the disciplinary hearing is limited to allowing the inmate to speak as to the defense to the misconduct. Id., at 41. "We try to keep it to the point of . . . what the misconduct was, what happened, what their version of the story is, what witnesses they want to present." Id. if an inmate requested an advocate but for some error was denied the services of an advocate, Lt. Meulemans testified that he would grant such an inmate the advocate services and allow the inmate to choose an advocate of his or her choice. Id., at 42.
Lt. Meulemans testified that the petitioner received notice of all disciplinary reports, as evidenced by the completed notice sections on each disciplinary report, which are all dated April 14, 1999, and range in time from 4:00 P.M. to 11:00 P.M. Id., at 46; Resp't Ex. A-E. Lt. Meulemans also testified that the investigation was conducted by Officer Candelaria and was completed on April 15, 1999, one week prior to the April 22, 1999 disciplinary hearing. Tr. (June 27, 2002), at 46. The petitioner was given an opportunity to request witnesses, but the petitioner became non-compliant during the investigation, ignoring the investigator's presence and refusing to sign the disciplinary investigation reports. Id., at 47-48. Lt. Meulemans also testified as to the petitioner's belligerence and verbal aggressiveness at the disciplinary hearing, which resulted in the petitioner's removal from that hearing. Id., at 49 and 66-67. Lt. Meulemans testified that the videotape referenced by the petitioner was not presented as evidence at the hearing. Id., at 31. Lastly, Lt. Meulemans testified that the petitioner received a written copy of the basis for the guilty findings and for the sanctions for each disciplinary report. Id., at 50, 53, 65, and 67-68. CT Page 12514
Officer Candelaria denied using racial epithets when talking to the petitioner during the investigation. Id., at 80 and 90. Officer Candelaria testified about the standard procedures she follows when investigating disciplinary reports; Id., at 85-89; and that she did not deviate from these standard procedures while investigating the April 14, 1999 incidents. Id., at 89. Officer Candelaria testified that while the petitioner initially acknowledged her presence, he then ignored her and did not avail himself of the opportunity to tell his side of the story.Id., at 91. Lastly, Officer Candelaria testified that she advised the petitioner about the opportunity to call witnesses at the hearing and of the advocate services available to the petitioner. Id. The petitioner made no statements whatsoever to Officer Candelaria during her investigation. Id., at 92.
Based upon the foregoing, this court first finds the petitioner's testimony not credible and the testimony from Lt. Meulemans and Officers Burris and Candelaria to be credible. The petitioner's due process claim in this matter fails because the petitioner received advanced written notice of the disciplinary charges, an opportunity to call witnesses and to present documentary evidence in his defense, and a written statement by the fact finder of the evidence relied upon and the reasons for the disciplinary action. The respondent warden has shown that there is evidence that supports the conclusion reached by the disciplinary hearing officer and that there was some evidence that supports the revocation of good time credits.
As to the petitioner's claims that he was denied his right to equal protection, that he was subject to retaliation because he assaulted someone with the Department of Correction, that he was deprived of his right to appeal the disciplinary reports and that the appeal process is inadequate, this court finds that the petitioner has failed to offer evidence in support of these claims. The record is also devoid of evidence in support of the April 19, 1999 disciplinary report the petitioner received for Interfering with Safety and Security. "An issue merely mentioned will be deemed abandoned." Henderson v. Commissioner ofCorrection, 66 Conn. App. 868 n. 1, 786 A.2d 450 (2001).
Having failed to establish any constitutional violations, the petition seeking habeas corpus relief is denied.
BARRY, JUDGE TRIAL REFEREE