******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

## GINO GENTILE *v.* COMMISSIONER
## OF CORRECTION
### (AC 46615)

Bright, C. J., and Alvord and Keller, Js.

*Syllabus*

The petitioner, who had been convicted of various crimes, including felony murder, appealed, on the granting of certification, from the judgment of the habeas court dismissing his petition for a writ of habeas corpus as untimely pursuant to statute (§ 52-470). The petitioner claimed, inter alia, that the court erred in concluding that he failed to establish good cause for his late filed petition. *Held*:

The petitioner could not prevail on his claim that the habeas court committed plain error in determining that his habeas petition was untimely, as he did not establish that the court made a patent or readily discernable error and he did not demonstrate a manifest injustice.

Pursuant to the Supreme Court's decision in *Rose* v. *Commissioner of Correction* (348 Conn. 333), which was issued while this appeal was pending, and which held that ineffective assistance of counsel may constitute an external, objective factor sufficient to establish good cause to excuse the late filing of a habeas petition pursuant to § 52-470, the habeas court did not apply the correct legal standard when deciding whether the petitioner had demonstrated good cause and, therefore, the petitioner was entitled to a new hearing at which the court must apply the proper legal standard with respect to § 52-470 (d) and (e).

Argued September 10, 2024—officially released January 28, 2025

*Procedural History*

Petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland, where the court, *Newson, J.*, rendered judgment dismissing the petition; thereafter, the petitioner, on the granting of certification, appealed to this court. *Reversed*; *further proceedings*.

*Judie L. Marshall*, assigned counsel, for the appellant (petitioner).

*Raynald A. Carre*, deputy assistant state's attorney, with whom, on the brief, were *Christian M. Watson*,

state's attorney, and *Helen J. McClellan*, supervisory assistant state's attorney, for the appellee (respondent).

*Opinion*

KELLER, J. The petitioner, Gino Gentile, appeals from the judgment of the habeas court dismissing as untimely his petition for a writ of habeas corpus under General Statutes § 52-470 (d) and (e).[1] On appeal, the petitioner claims that the court (1) committed plain error in determining that his habeas petition was untimely and (2) erred in concluding that he failed to establish good cause for this late filed petition. With respect to the former, we conclude that the petitioner

[1] General Statutes § 52-470 provides in relevant part: "(d) In the case of a petition filed subsequent to a judgment on a prior petition challenging the same conviction, there shall be a rebuttable presumption that the filing of the subsequent petition has been delayed without good cause if such petition is filed after the later of the following: (1) Two years after the date on which the judgment in the prior petition is deemed to be a final judgment due to the conclusion of appellate review or the expiration of the time for seeking such review; (2) October 1, 2014; or (3) two years after the date on which the constitutional or statutory right asserted in the petition was initially recognized and made retroactive pursuant to a decision of the Supreme Court or Appellate Court of this state or the Supreme Court of the United States or by the enactment of any public or special act. For the purposes of this section, the withdrawal of a prior petition challenging the same conviction shall not constitute a judgment. The time periods set forth in this subsection shall not be tolled during the pendency of any other petition challenging the same conviction. Nothing in this subsection shall create or enlarge the right of the petitioner to file a subsequent petition under applicable law.

"(e) In a case in which the rebuttable presumption of delay under subsection (c) or (d) of this section applies, the court, upon the request of the respondent [the Commissioner of Correction], shall issue an order to show cause why the petition should be permitted to proceed. The petitioner or, if applicable, the petitioner's counsel, shall have a meaningful opportunity to investigate the basis for the delay and respond to the order. If, after such opportunity, the court finds that the petitioner has not demonstrated good cause for the delay, the court shall dismiss the petition. For the purposes of this subsection, good cause includes, but is not limited to, the discovery of new evidence which materially affects the merits of the case and which could not have been discovered by the exercise of due diligence in time to meet the requirements of subsection (c) or (d) of this section. . . ."

has not established plain error. As to the latter, in light of our Supreme Court's recent decision in *Rose* v. *Commissioner of Correction*, 348 Conn. 333, 304 A.3d 431 (2023), which recognized that ineffective assistance of counsel may constitute good cause for the delay in filing, and this court's subsequent decisions in *Ibrahim* v. *Commissioner of Correction*, 229 Conn. App. 658, A.3d (2024), *Coney* v. *Commissioner of Correction*, 225 Conn. App. 450, 315 A.3d 1161 (2024), *Michael G.* v. *Commissioner of Correction*, 225 Conn. App. 341, 314 A.3d 659 (2024), *Rapp* v. *Commissioner of Correction*, 224 Conn. App. 336, 311 A.3d 249, cert. denied, 349 Conn. 909, 314 A.3d 601 (2024), and *Hankerson* v. *Commissioner of Correction*, 223 Conn. App. 562, 308 A.3d 1113 (2024), we conclude that the judgment of the habeas court must be reversed, and the case remanded for a new good cause hearing.

The following facts and procedural history are relevant to our resolution of the petitioner's appeal. Following a jury trial, the petitioner was convicted of felony murder in violation of General Statutes § 53a-54c, robbery in the first degree in violation of General Statutes § 53a-134 (a) (1), and conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (1) and 53a-48 (a). See *State* v. *Gentile*, 75 Conn. App. 839, 840–41, 818 A.2d 88, cert. denied, 263 Conn. 926, 823 A.2d 1218 (2003).[2] The petitioner received a

---

[2] On the basis of the evidence presented at trial, the jury reasonably could have found the following facts. The petitioner and two other individuals planned to rob a restaurant in New Britain on the evening of March 17, 1997. *State* v. *Gentile*, supra, 75 Conn. App. 841. After ensuring that there were no customers in the restaurant or police in the area, the petitioner put on a mask, chambered a round in his .380 semiautomatic gun, and entered the restaurant with the other two men. Id., 841–42. The petitioner entered the kitchen area, where two employees were located. Id., 842. During the course of the robbery, the petitioner fired a single shot from his weapon that struck the victim in the back of his head, causing his death the following day. Id.

total effective sentence of 100 years of imprisonment. Id., 842–43. This court affirmed the judgment of conviction; see id., 841;[3] and our Supreme Court denied the subsequent petition for certification. See *State* v. *Gentile*, 263 Conn. 926, 823 A.2d 1218 (2003).

After the events underlying his Connecticut conviction, the petitioner fled to New Jersey, where he committed various serious criminal offenses. Prior to his Connecticut trial and conviction, the petitioner was convicted in New Jersey of murder, attempt to commit murder, and manslaughter.[4] On May 5, 2000, the New Jersey court sentenced the petitioner to serve an indeterminate life sentence, and he remains ineligible for

---

[3] In his direct appeal to this court, the petitioner claimed that "(1) the trial court improperly permitted the state to introduce into evidence the cooperation agreement that the state had entered into with a witness, [(2) the court improperly] permitted the state to question the witness about the agreement and to comment on it during closing argument, [3] the court improperly refused to charge the jury with his requested instruction about the credibility of accomplice testimony, [4] the court improperly refused to inquire into his complaints about his attorney and [5] there was insufficient evidence for the jury to have convicted him of conspiracy to commit robbery in the first degree." *State* v. *Gentile*, supra, 75 Conn. App. 841.

[4] The Appellate Division of the New Jersey Superior Court set forth the following summary of the petitioner's criminal offenses in New Jersey: "After a trial by jury, [the petitioner] was convicted of multiple offenses, including murder of one victim, attempted murder of another, and aggravated manslaughter with respect to the death of a third victim. The incident occurred on March 30, 1997, when [the petitioner] fired multiple rounds from a handgun, initially at a group of individuals on the street in Paterson. [The petitioner] did not testify at his trial. However, he had given a statement to the police which was admitted at trial. In the statement, [the petitioner] contended he was shooting in self-defense. In support of that contention, he said he had not brought the gun to the scene but, when he felt threatened, he retrieved it from a tire well, where it had been previously placed by his [codefendant].

"In the course of their investigation, the police learned that [the petitioner] had been involved in an incident in Connecticut thirteen days prior to this incident in Paterson. In the Connecticut incident, [the petitioner] shot and killed an individual in the course of robbing a restaurant. Ballistic testing revealed that the gun used in Connecticut was the same gun that was used in Paterson." *State* v. *Gentile*, No. A-5597-08T3, 2011 WL 677281, *1 (N.J. Super. App. Div. February 25, 2011), cert. denied, 207 N.J. 188, 23 A.3d 413 (2011).

parole until 2037. The petitioner's subsequent Connecticut sentence of 100 years of incarceration was ordered to be served consecutive to the New Jersey sentence.

In February, 2003, while in custody in New Jersey, the petitioner filed a petition for a writ of habeas corpus in the Connecticut Superior Court, alleging the ineffective assistance of his criminal trial counsel, Attorney Douglas Pelletier.[5] The Office of the Chief Public Defender appointed Attorney Thomas Mullaney III to represent the petitioner in his first Connecticut habeas action. During the course of this representation, Mullaney wrote a letter to the petitioner dated February 29, 2008. He opined to the petitioner that "[t]here is no such thing as a 'strong' [ineffective assistance of counsel] habeas case in Connecticut. . . . You should [not] go into a Connecticut habeas case thinking you have any kind of 'strong' chance to win, no matter what the issues." (Emphasis omitted.) Mullaney further advised the petitioner: "You are not currently even serving the Connecticut sentence, yet. If it were me, I would try to get an agreement that you can have sentence review on the current sentence and just file a federal habeas on the issue appealed [to the Connecticut Appellate Court] . . . . You can always file an [ineffective assistance of counsel] habeas as to the Connecticut sentence later, since you are not even in 'custody' yet on that sentence."

The petitioner's 2003 Connecticut habeas action was resolved by a stipulation. Pursuant to this stipulation, the petitioner's right to apply for sentence review was restored, and the parties agreed that he had exhausted his state remedies to permit him to pursue a habeas

---

[5] In his amended petition, dated February 6, 2007, the petitioner alleged that Pelletier improperly failed (1) to prepare adequately for trial by failing to secure the appearance of an exculpatory witness, (2) to cross-examine a witness, (3) to object to and preserve for appeal issues regarding the cooperation agreement of the petitioner's codefendant, and (4) to preserve his opportunity for sentence review.

action in federal court on certain issues raised in his direct appeal.[6] On April 7, 2008, the petitioner filed a

[6] The March 13, 2008 stipulation provided the following: "The petitioner may file a new application for review of sentence ('application') pursuant to [General Statutes §] 51-195 with respect to his Connecticut conviction . . . . The Office of the Chief Public Defender shall in a timely fashion appoint such counsel as shall be required and appropriate to assist the petitioner in pursing the Application . . . . The respondent and the state of Connecticut by counsel stipulate that the state will not raise any prior existing procedural or jurisdictional objections to a consideration of the petitioner's application on its merits . . . . The state reserves all permissible responses to the application which it may choose to make as to the substance of the issues raised by the petitioner . . . . The petitioner stipulates that whether the application is ultimately acted on favorably or unfavorably to the petitioner by the sentence review division of the Connecticut Superior Court, it is the consideration of the application on its merits which is the relief stipulated to in favor of the petitioner . . . . The petitioner and the respondent specifically stipulate that acceptance of and an order of this habeas court pursuant to this stipulation shall act to restore any and all in-personam and subject matter jurisdiction to the sentence review division as shall be necessary for a full consideration of the petitioner's application on the merits . . . . The petitioner and the respondent further stipulate that this resolution of this habeas is stipulated by the respondent to constitute an 'exhaustion' of all issues and remedies sought by the petitioner as to the direct appeal . . . to the extent that any such 'exhaustion' is or may be required as a condition precedent to the filing of or seeking any further relief on said issues in other forums including any federal writ of habeas corpus."

The United States Court of Appeals for the Second Circuit has stated that "the federal habeas statute normally requires a state prisoner to exhaust state remedies before filing a habeas petition in federal court." *McKithen* v. *Brown*, 481 F.3d 89, 100 (2d Cir. 2007), cert. denied, 552 U.S. 1179, 128 S. Ct. 1218, 170 L. Ed. 2d 59 (2008). The United States Supreme Court has explained: "Comity thus dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief. . . . This rule of comity reduces friction between the state and federal court systems by avoiding the unseem[liness] of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance. . . . Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, we conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the [s]tate's established appellate review process." (Citations omitted; internal quotation marks omitted.) *O'Sullivan* v. *Boerckel*, 526 U.S. 838, 844–45, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); see generally *Parker* v. *Warden*, Superior Court, judicial district of Tolland, Docket No. CV-11-4004290-S (December 5, 2014)

motion for judgment on the parties' stipulation, which the court, *dos Santos, J.*, granted two days later. Accordingly, a judgment was rendered in accordance with the terms of the stipulation.

While he remained incarcerated in New Jersey, the petitioner filed his application for sentence review in Connecticut. Attorney Robert J. McKay was appointed to represent the petitioner in that proceeding. The petitioner argued that his sentence was inappropriate and disproportionate pursuant to Practice Book § 43-28[7] and claimed that it should run concurrently with his New Jersey sentence. During the time of his representation, McKay wrote a letter to the petitioner dated September 29, 2012. In this letter, McKay stated: "I wanted to let you know that I have not forgotten the possibility of a new habeas case. I am continuously researching your issues. . . . Of course, the Connecticut sentence still remains to be served when you leave New Jersey. I would like to find out whether a Connecticut habeas case can be filed with the [c]ourt while the inmate [is] in another [s]tate, but has not [started] the sentence imposed by Connecticut. In addition, a new law involving habeas cases in Connecticut will be effective October 1, 2012. I will have to review that and get back to you as to . . . whether it affects you or not."[8]

(in practical terms, law of habeas requires proper exhaustion), aff'd sub nom. *Parker* v. *Commissioner of Correction*, 169 Conn. App. 300, 149 A.3d 174, cert. denied, 324 Conn. 903, 151 A.3d 1289 (2016).

[7] Practice Book § 43-28 provides: "The review division shall review the sentence imposed and determine whether the sentence should be modified because it is inappropriate or disproportionate in the light of the nature of the offense, the character of the offender, the protection of the public interest, and the deterrent, rehabilitative, isolative, and denunciatory purposes for which the sentence was intended."

[8] Our Supreme Court has stated: "As a part of a legislative effort to expedite the resolution of habeas cases, the General Assembly, in 2012, passed legislation to curb the filing of untimely habeas petitions. In particular, the legislature amended . . . § 52-470 and created a rebuttable presumption of delay without good cause, providing that Superior Court judges must dismiss habeas petitions that are not filed within certain specified time periods. See Public Acts 2012, No. 12-115, § 1." *Felder* v. *Commissioner of Correction*,

In its November 20, 2012 memorandum of decision, the sentence review division of the Connecticut Superior Court found that "there is nothing inappropriate or disproportionate about the sentence imposed by the trial court in this case. The petitioner is a multistate murderer who senselessly took the life of a young, hardworking father and husband. In reviewing the record as a whole, the division finds that the sentencing court's actions were in accordance with the parameters of Connecticut Practice Book § 43-23 . . . ." Accordingly, the petitioner's Connecticut sentence was affirmed.

The self-represented petitioner commenced a habeas action in federal court in the United States District Court for the District of New Jersey on October 14, 2008, challenging his Connecticut conviction. Approximately one month later, the District Court of New Jersey ordered the habeas petition transferred to the United States District Court for the District of Connecticut; however, this transfer did not occur until January 26, 2011. In his amended habeas petition, filed pursuant to 28 U.S.C. § 2254,[9] the petitioner asserted the same five grounds he had raised in his direct appeal of his Connecticut conviction.[10] On March 25, 2014, the District Court of Connecticut denied the amended petition for a writ of habeas corpus.[11] See *Gentile* v. *Ricci*, United States District Court, Docket No. 3:11CV138 (JBA), 2014

---

348 Conn. 396, 399, 306 A.3d 1061 (2024); see also *Kelsey* v. *Commissioner of Correction*, 343 Conn. 424, 434, 274 A.3d 85 (2022).

[9] Title 28 of the United States Code, § 2254 (a), provides: "The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or law or treaties of the United States."

[10] See footnote 3 of this opinion.

[11] We note that our Supreme Court has determined that the phrase " 'prior petition' [as used in § 52-470 (d)] unambiguously refers only to prior state [of Connecticut] habeas petitions." *Felder* v. *Commissioner of Correction*, 348 Conn. 396, 405, 306 A.3d 1061 (2024). The petitioner's federal habeas petition, therefore, does not constitute a prior petition for purposes of § 52-470.

WL 1248221 (D. Conn. March 25, 2014), appeal dismissed, United States Court of Appeals for the Second Circuit, Docket No. 14-1162 (2d Cir. May 14, 2014). Additionally, it did not issue a certificate of appealability, concluding that "the petitioner has not shown that he was denied a constitutionally or federally protected right. Thus, any appeal from this order would not be taken in good faith . . . ." Id., *14. The United States Court of Appeals for the Second Circuit declined to afford the petitioner further review with respect to the denial of his federal habeas petition. *Gentile* v. *Ricci*, United States Court of Appeals for the Second Circuit, Docket No. 14-1162 (2d Cir. May 14, 2014).

On May 11, 2016, the self-represented petitioner commenced the present habeas action. Thereafter, the petitioner, represented by counsel, subsequently filed a second amended petition. He alleged ineffective assistance of Pelletier, his criminal trial counsel, in counts one and two, claiming that Pelletier performed deficiently which resulted in prejudice and that Pelletier suffered from a medical condition that resulted in a complete breakdown of the adversarial process. In count three, the petitioner asserted that his rights to due process and a fair trial were violated as a result of the prosecutor's failure to disclose evidence that was material and exculpatory. Finally, in count four, the petitioner alleged ineffective assistance of Pamela Nagy, his appellate counsel. The respondent, the Commissioner of Correction, filed his return and special defenses on July 26, 2019.[12] The petitioner filed his reply on August 22, 2019.

_____

[12] Specifically, the respondent set forth the following special defenses: "1. The petitioner's claims one through three have been previously litigated in the petitioner's direct appeal and first habeas petition. Such claims are therefore barred by the doctrine of res judicata.

"2. The petitioner's claims one through three have or could have been previously litigated in the petitioner's direct appeal and first habeas petition. Such claims are improper successive claims that are barred.

"3. The petitioner's claims three and four are barred by the doctrine of laches as the petitioner has unreasonably delayed presentment of such claims, which delay is unduly prejudicial to the respondent."

At the request of the respondent,[13] the court, *Oliver, J.*, ordered the petitioner to show cause as to why this petition should not be dismissed as untimely because it was filed beyond the time limit for successive petitions in § 52-470 (d).[14] See General Statutes § 52-470 (e). In his March 7, 2022 written response to the court's order to show cause, the petitioner asserted that he has been detained in a New Jersey correctional facility since May 14, 2001, and has very limited access to Connecticut legal materials.[15] Furthermore, he claimed that good cause exists as a result of the erroneous and misleading legal advice he received from Mullaney and McKay regarding the petitioner's ability to file another habeas action in Connecticut while he was held in New Jersey and whether § 52-470, which was effective in 2012, would apply to him.[16]

---

[13] In the motion requesting the petitioner to show cause why this petition should be allowed to proceed, the respondent's counsel stated that the petitioner had filed a prior state habeas action which resulted in a stipulated judgment on April 9, 2008, the current state habeas action was filed on May 11, 2016, more than two years after the expiration of time to seek appellate review of the prior petition and was filed after October 1, 2014, and therefore a rebuttable presumption existed that the current petition had been delayed without good cause pursuant to § 52-470 (c) and (d).

[14] Judge Oliver's order stated: "The respondent's motion for order to show cause is granted. The petitioner shall file a responsive pleading within thirty days, if objecting to the dismissal and including a position and an offer of proof demonstrating good cause for the delay in filing the petition."

[15] The petitioner's counsel also represented that delays had ensued as a result of logistical issues in having the petitioner appear remotely while physically held in New Jersey and due to the COVID-19 pandemic.

[16] Specifically, the petitioner's counsel stated the following in the written response to show cause: "The legal counsel provided by . . . Mullaney and . . . McKay . . . ultimately led the petitioner to unfortunately believe that he should only refile his habeas petition in Connecticut once he was serving his Connecticut sentence. . . . The petitioner would further testify that the question . . . McKay had raised in his letter regarding whether the petitioner could file a habeas petition in Connecticut while serving his New Jersey sentence was confirmed when he observed . . . McKay argue to the court at the sentence review hearing that the petitioner's Connecticut sentence should be reduced because of the petitioner's inability to bring a habeas action in Connecticut due to the Connecticut sentencing running consecutive to the New Jersey sentence. Such testimony would be evidenced

The court, *Newson, J.*, held an evidentiary hearing on February 17, 2023. Mullaney, McKay, and the petitioner testified at this proceeding. Mullaney stated that, in his February 29, 2008 letter, he was informing the petitioner that a Connecticut habeas action could be commenced at a later date because, even if he prevailed in such an action and had his Connecticut sentence vacated, the petitioner first had to complete his New Jersey sentence of approximately thirty years before he would be released from incarceration. In other words, there is no rush or immediate need to file a habeas action in Connecticut because the petitioner had to complete his New Jersey sentence prior to the start of his Connecticut sentence.[17]

McKay indicated that, at the time he represented the petitioner, he was "fairly new" with respect to his habeas practice.[18] In response to questions concerning a letter he had sent to the petitioner on September 29, 2012, McKay further stated that he "believed" he had followed up with the petitioner regarding the applicability of § 52-470 but could not provide any specifics regarding such a conversation. McKay later noted that he could not recall whether he had, in fact, spoken with the petitioner regarding § 52-470 and its impact on the petitioner's ability to file another habeas petition. He did recall subsequently advising the petitioner that he could not file another habeas petition until he was incarcerated in Connecticut.

by the fact that, in the court's decision affirming the petitioner's sentence, the court noted: He argues this sentence was made consecutive to his New Jersey sentence and therefore he could not bring a habeas action in Connecticut." (Internal quotation marks omitted.)

[17] Additionally, Mullaney noted in his letter that he had returned the transcripts from the criminal trial to the petitioner and testified that any materials from his case file that he did not send to the petitioner would have been sent to the habeas unit of the Public Defender's Office.

[18] McKay stated that he had destroyed his case file regarding his representation of the petitioner "a while ago . . . ."

The petitioner testified that both Mullaney and McKay had advised him that he could not file a habeas action in Connecticut until he began to serve the sentence imposed by the criminal court in Connecticut.[19] The petitioner also stated that McKay never followed up with additional information regarding § 52-470 and whether it applied to him. The petitioner indicated that, at the time he commenced this habeas action, he was unaware of the time limits set forth in § 52-470 and did not learn about them until he received notice of the good cause hearing. He unequivocally indicated that he was unaware of the two year limitation of § 52-470, and, had he known of it, he would have filed the present habeas action within this time frame. Finally, the petitioner testified that his decision to file the present habeas action was based upon learning of Pelletier's death and his desire to demonstrate that he was "earnest about wanting" to pursue this matter.

On April 18, 2023, the habeas court issued a memorandum of decision summarizing the petitioner's argument "for not filing the present habeas [petition] until more than eight years after his prior habeas [petition] was disposed of, and more than one and one-half years past the operative deadline of October 1, 2014, was that he was unsure if he could file a habeas in Connecticut state courts while still being held in New Jersey." It found that the petitioner's belief was not credible due to the fact he had, in fact, litigated his first state habeas petition and his application for sentence review in Connecticut while in custody in New Jersey. The court further determined that, assuming that the petitioner

---

[19] In *Hickey* v. *Commissioner of Correction*, 82 Conn. App. 25, 842 A.2d 606 (2004), appeal dismissed, 274 Conn. 553, 876 A.2d 1195 (2005), this court stated: "Under the federal rule, which this court looks to for guidance, *the mere fact that a petitioner is serving a consecutive sentence outside Connecticut, rather than within the state, does not deprive the court of jurisdiction for purposes of habeas corpus to determine whether the commissioner is holding the petitioner illegally*." (Emphasis added.) Id., 34.

had no access to legal materials to research Connecticut habeas law while incarcerated in New Jersey, "there was no credible evidence that he was otherwise cut off from the outside world during [this] time . . . and that he could not have posed the questions to family [or] friends to research the matters for him or to seek the advice of counsel on his behalf." Additionally, the court specifically found that no external force outside of the control of the petitioner and counsel interfered with or prohibited him from initiating the present action prior to October 1, 2014. Additionally, the court stated that the petitioner and McKay bore the responsibility for commencing this action after the statutory deadline of October 1, 2014, and that the reasons proffered by the petitioner for the delay were not credible and not supported by the record. The court specifically stated: "In any event, even if true, . . . McKay's incorrect advice would be insufficient by itself to create good cause." (Internal quotation marks omitted.) Ultimately, the court concluded that the petitioner had failed to demonstrate good cause for the untimely filing and dismissed the petition for a writ of habeas corpus. The court subsequently granted the petitioner's petition for certification to appeal the dismissal.

In his principal and reply appellate briefs, the petitioner claims that the habeas court (1) improperly determined that he failed to establish good cause for the untimely filing of this habeas petition, and (2) made factual findings that were clearly erroneous.[20] Following

---

[20] Specifically, the petitioner asserts that the court improperly found that (1) he and McKay were aware that a Connecticut habeas petition could be filed while the petitioner was incarcerated in New Jersey and not serving his Connecticut sentence, (2) he knew or should have known that a Connecticut habeas petition could have been filed because he had done so in 2003, (3) he knew that counsel would likely be appointed had he filed an action in Connecticut, (4) he could have availed himself of friends or family to assist him in obtaining access to Connecticut legal materials and legal advice, and (5) the delay in this case was twenty-two years, commencing with the date of his Connecticut sentencing.

the submission of the respondent's appellate brief, and his reply brief, the petitioner filed a motion for permission to file a supplemental brief. This court granted the petitioner permission to file a supplemental brief on or before April 25, 2024, and the respondent to file a supplemental brief twenty days later.

In his supplemental brief to this court, the petitioner claims that he has never had a full habeas trial on the merits and that his first Connecticut habeas action that ended with a stipulation did not constitute a judgment deemed to be final within the context of § 52-470. He further asserts, pursuant to the language of § 52-470, that the present matter constitutes his first habeas petition with a filing deadline of October 1, 2017, and therefore the habeas court's determination that the commencement of this matter was untimely constituted plain error. In support of this argument, the petitioner asserts that § 52-470 does not include a reference to resolution by way of a stipulation. The respondent counters in his supplemental brief that this court should reject the petitioner's claim of plain error for three reasons: First, the 2008 stipulated judgment was a judgment to end litigation; second, the present habeas action constitutes a successive petition within the plain meaning of § 52-470; and third, the petitioner acknowledges that the state complied with the terms of the 2008 stipulated judgment.

I

We first address the claim raised in the petitioner's supplemental brief that the court committed plain error[21] in determining that his 2016 habeas petition was untimely. Specifically, he argues that his 2003 habeas

[21] Practice Book § 60-5 provides in relevant part that "[t]he court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

petition that was resolved by the parties' 2008 stipulation did not constitute a prior petition within the meaning of § 52-470, and therefore the 2016 habeas petition was filed prior to the October 1, 2017 statutory deadline and, thus, timely.[22] We disagree.

"Under the plain error doctrine, an appellant must demonstrate that the claimed error is *both* so clear *and* so harmful that a failure to reverse the judgment would result in manifest injustice. . . . It is axiomatic that . . . [t]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that [an appellate] court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment . . . for reasons of policy. . . . Put another way, plain error review is reserved for only the most egregious errors. When an error of such a magnitude exists, it necessitates reversal. . . . An appellate court addressing a claim of plain error first must determine if the error is indeed plain in the sense that it is patent [or] readily [discernible] on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable. . . . This determination clearly requires a review of the plain error claim presented in light of the record." (Emphasis in original; internal quotation marks omitted.) *Banks* v. *Commission of Correction*, 225 Conn. App. 234, 249–50, 314 A.3d 1052, cert. denied,

[22] General Statutes § 52-470 (c) provides in relevant part: "Except as provided in subsection (d) of this section, there shall be a rebuttable presumption that the filing of a petition challenging a judgment of conviction has been delayed without good cause if such petition is filed after the later of the following: (1) Five years after the date on which the judgment of conviction is deemed to be a final judgment due to the conclusion of appellate review or the expiration of the time for seeking such review; (2) *October 1, 2017*; or (3) two years after the date on which the constitutional or statutory right asserted in the petition was initially recognized and made retroactive . . . ." (Emphasis added.)

349 Conn. 922, 321 A.3d 1130 (2024); see also *State* v. *Daren Y.*, 350 Conn. 393, 405–406, 324 A.3d 734 (2024) (plain error is extraordinary remedy used by appellate court to rectify errors committed at trial that, although unpreserved, are of such monumental proportion that they threaten to erode our system of justice and work serious and manifest injustice on aggrieved party); *State* v. *Jones*, 210 Conn. App. 249, 272, 269 A.3d 870 (plain error doctrine described as very demanding standard that should be invoked sparingly), cert. denied, 343 Conn. 901, 272 A.2d 199 (2022). We conclude that the petitioner has failed to establish either prong of the test for plain error; that is, the petitioner has not demonstrated (1) an obvious and readily discernable error, and (2) that such error was so harmful or prejudicial that it resulted in manifest injustice. See *State* v. *Kyle A.*, 348 Conn. 437, 446, 307 A.3d 249 (2024).

The petitioner contends that his 2003 petition, which was resolved by a 2008 stipulated judgment, did not constitute a "prior petition" because the reinstatement of his right to sentence review and the agreed on exhaustion for purposes of federal habeas review were not appealable issues and, therefore, not a "final judgment" within the context of § 52-470 (d). He also asserts that his present habeas petition is not frivolous and that he "has never had a full habeas trial on the merits." The respondent counters, inter alia, that the 2008 stipulation constituted a judgment to end the litigation of his first habeas petition and, therefore, the present habeas petition is his second and thus falls within the plain language of § 52-470 (d) as a successive petition.

The petitioner has not persuaded us that the court committed an obvious and readily discernable error by treating the 2008 stipulation as a final judgment within the context of § 52-470. We emphasize that our Supreme Court has stated that "[i]t is not enough for the [appellant] simply to demonstrate that his position is correct.

Rather, the party seeking plain error review must demonstrate that the claimed impropriety was so clear, obvious and indisputable as to warrant the extraordinary remedy of reversal." (Internal quotation marks omitted.) *State* v. *Kyle A.*, supra, 348 Conn. 445.

As noted in the respondent's brief, "[t]he essence of the [stipulated] judgment is that the parties to the litigation have voluntarily entered into an agreement setting their dispute or disputes at rest and that, upon this agreement, the court has entered judgment conforming to the terms of the agreement. . . . It necessarily follows that if the judgment conforms to the stipulation it cannot be altered or set aside without the consent of all the parties, unless it is shown that the stipulation was obtained by fraud, accident or mistake. . . . *For a judgment by consent is just as conclusive as one rendered upon controverted facts.*" (Citations omitted; emphasis added; internal quotation marks omitted.) *Gillis* v. *Gillis*, 214 Conn. 336, 339–40, 572 A.2d 323 (1990); *Bryan* v. *Reynolds*, 143 Conn. 456, 460–61, 123 A.2d 192 (1956) (same); see also *Wallerstein* v. *Stew Leonard's Dairy*, 258 Conn. 299, 310, 780 A.2d 916 (2001) (*Zarella, J.*, dissenting) (although obtained through mutual consent of parties, stipulated judgment is binding to same degree as judgment obtained through litigation); *Housing Authority* v. *Lamothe*, 225 Conn. 757, 767, 627 A.2d 367 (1993) (same); see generally *Lime Rock Park, LLC* v. *Planning & Zoning Commission*, 335 Conn. 606, 625, 264 A.3d 471 (2020) (stipulated judgment bears earmarks both of judgments rendered after litigation and contracts derived though mutual agreement).

The petitioner has not demonstrated that the court made an obvious or readily discernable error in treating the judgment rendered after the parties' stipulation as no different than a judgment on the merits. Furthermore, as to his bald assertion that he could not file an

appeal from the 2008 stipulation, the petitioner has not provided us with any authority to support such a contention. For these reasons, we conclude that the petitioner has not met his heavy burden of establishing a patent or readily discernable error. Additionally, the petitioner has not demonstrated a manifest injustice, which is the second requirement necessary to prevail on a claim of plain error. Regardless of whether the court improperly determined that the 2016 habeas action was untimely, the petitioner still had the opportunity to demonstrate good cause and have the court consider the merits of his petition. Accordingly, we conclude that reversal pursuant to the plain error doctrine is not warranted in the present case.

## II

Next, the petitioner claims that the court erred in concluding that he failed to establish good cause for his late filed petition. He argues, inter alia, that ineffective assistance of counsel may constitute good cause for the untimely filing of a successive petition for a writ of habeas corpus.[23] We agree and conclude that the

[23] In *Hankerson* v. *Commissioner of Correction*, supra, 223 Conn. App. 569–71, we explained: "To be clear, although the court in *Rose* held that constitutionally deficient performance by habeas counsel may constitute good cause for a late-filed petition, it did not hold that counsel's failure to advise a petitioner of the deadline for filing a new petition necessarily constitutes ineffective assistance of counsel. . . . Such a determination is a fact specific inquiry that depends on a number of factors, including the relationship between the petitioner and his counsel during the pertinent time. For example, a petitioner who terminates his relationship with counsel before withdrawing his pending petition and filing a new petition stands in a very different position than does a petitioner who withdraws his petition on the advice of his counsel and is told the wrong deadline for filing a new petition by that counsel. . . .

"Furthermore, although the habeas court may conclude that ineffective assistance of counsel constitutes good cause in this case, it is not required to do so. Such a determination is still left to the discretion of the habeas court taking into consideration the [*Kelsey* v. *Commissioner of Correction*, 343 Conn. 424, 438, 274 A.3d 85 (2022)] factors. . . . No single factor is dispositive, and, in ascertaining whether good cause exists, the habeas court must consider all relevant factors in light of the totality of the facts and

judgment of the habeas court dismissing the petition must be reversed and the case remanded for a new good cause hearing.

In *Kelsey* v. *Commissioner of Correction*, 343 Conn. 424, 274 A.3d 85 (2022),[24] our Supreme Court explained that the "factors directly related to the good cause determination [under § 52-470 (e)] include, but are not limited to: (1) whether external forces outside the control of the petitioner had any bearing on the delay; (2) whether and to what extent the petitioner or his counsel bears any personal responsibility for any excuse proffered for the untimely filing; (3) whether the reasons proffered by the petitioner in support of a finding of good cause are credible and are supported by evidence in the record; and (4) how long after the expiration of the filing deadline did the petitioner file the petition. No single factor necessarily will be dispositive, and the court should evaluate all relevant factors in light of the totality of the facts and circumstances presented." (Internal quotation marks omitted.) Id., 438. The court further explained that whether and *to what extent the petitioner or his counsel bore any personal responsibility for the lack of knowledge of the law* was a factor to be considered in the determining whether good cause has been established under § 52-470. Id., 445.

circumstances presented. . . . For example, in the context of a purported failure to advise the petitioner of the applicable filing deadline, the habeas court could conclude that counsel's failure was constitutionally deficient and still conclude that good cause does not exist because the petitioner was otherwise aware of the deadline or unreasonably delayed in filing a new petition when he had opportunities to independently discover the applicable deadline. In the end, the court's conclusion as to whether the petitioner has established good cause is still reviewed under the abuse of discretion standard." (Citations omitted; footnote omitted; internal quotation marks omitted.)

[24] We note that our Supreme Court released its decision in *Kelsey* approximately eleven months prior to the habeas court's decision in the present case.

During the pendency of this appeal, our Supreme Court issued its decision in *Rose* v. *Commissioner of Correction*, supra, 348 Conn. 333. In that case, the court agreed with the petitioner's argument that "the actions of counsel that are ineffective [under the sixth amendment to the United States constitution] cannot be imputed to the petitioner and, therefore, that ineffective assistance of counsel constitutes an external, objective factor sufficient to establish good cause." (Internal quotation marks omitted.) Id., 346. We recently summarized that reasoning in the opinion as follows: "In *Rose*, the court discussed [the *Kelsey*] factors relevant to the good cause determination under § 52-470 (e). . . . In determining whether deficient performance of counsel may constitute good cause under § 52-470 (e), our Supreme Court turned to the distinction between internal and external factors that cause or contribute to the failure to comply with a procedural rule. . . . Specifically, the court noted that, in the context of the procedural default doctrine, [*i*]*neffective assistance of counsel is an objective factor external to the defense because the* [*s*]*ixth* [*a*]*mendment itself requires that responsibility for the default be imputed to the* [*s*]*tate.* . . . In other words, it is not the gravity of the attorney's error that matters, but that it constitutes a violation of [the] petitioner's right to counsel, so that the error must be seen as an external factor, i.e., imputed to the [s]tate. . . . Although a petitioner is bound by his counsel's inadvertence, ignorance, or tactical missteps . . . *a petitioner is not bound by the ineffective assistance of his counsel.* . . . It then concluded: Consistent with this authority, we conclude that ineffective assistance of counsel is an objective factor external to the petitioner that may constitute good cause to excuse the late filing of a habeas petition under the totality of the circumstances pursuant to § 52-470 (c) and (e)."

(Citations omitted; emphasis in original; internal quotation marks omitted.) *Ibrahim* v. *Commissioner of Correction*, supra, 229 Conn. App. 662–64.

The habeas court in the present case did not have the benefit of our Supreme Court's subsequent clarification of *Kelsey* "regarding the fundamental distinction between internal and external factors that cause or contribute to a petitioner's failure to comply with a procedural rule." (Internal quotation marks omitted.) *Hankerson* v. *Commissioner of Correction*, supra, 223 Conn. App. 569; see also *Rapp* v. *Commissioner of Correction*, supra, 224 Conn. App. 344. We conclude, therefore, that the habeas court, through no fault of its own, did not apply the correct legal standard subsequently set forth by our Supreme Court in *Rose* v. *Commissioner of Correction*, supra, 348 Conn. 333, when deciding whether the petitioner in the present case had demonstrated good cause for the late filing of his petition. See *Hankerson* v. *Commissioner of Correction*, supra, 569. Simply put, as explained by the court in *Rose*, the actions of counsel that are ineffective under the sixth amendment cannot be imputed to the petitioner, and, therefore, the ineffective assistance of counsel constitutes an external, objective factor sufficient to establish good cause for the untimely filing. See *Ibrahim* v. *Commissioner of Correction*, supra, 229 Conn. App. 664; *Rapp* v. *Commissioner of Correction*, supra, 343.

Here, the petitioner has claimed that the delayed filing of the present habeas petition was the result of ineffective assistance he received from both Mullaney and McKay. Accordingly, the petitioner is entitled to a new hearing at which the habeas court must apply the proper legal standard with respect to § 52-470 (d) and (e). See *Rose* v. *Commissioner of Correction*, supra, 348 Conn. 350; see also *Ibrahim* v. *Commissioner of*

*Correction*, supra, 229 Conn. App. 664; *Coney* v. *Commissioner of Correction*, supra, 225 Conn. App. 454; *Michael G.* v. *Commissioner of Correction*, supra, 225 Conn. App. 343; *Rapp* v. *Commissioner of Correction*, supra, 224 Conn. App. 344.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.